Thomas Joseph GRASSO, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. C 92–1001.

Court of Criminal Appeals of Oklahoma.

July 15, 1993.

Ron Wallace, David Iski, Asst. Public Defenders, Johnie O'Neal, Public Defender, Tulsa, for petitioner.

David Moss, Dist. Atty., Tulsa, Susan Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for respondent.

## OPINION

LANE, Judge:

Petitioner in this case, Thomas Grasso, entered pleas of guilty to the crimes of First Degree Burglary, in violation of 21 O.S.1991, § 1431, and First Degree Murder, in violation of 21 O.S.1991, § 701.7, in the District Court of Tulsa County, Case No. CF–91–3404. · Petitioner was sentenced to five hundred (500) years incarceration on

the burglary conviction and was assessed the death penalty on the murder conviction.

Preliminary hearing was held in his case on September 4, 1992. Petitioner was at this time bound over for further proceedings. On September 11, 1992, defense counsel filed an application for determination of competency in the District Court. Following a hearing on this date, the trial court granted petitioner's application and ordered Dr. William Cooper, a licensed clinical psychologist with a Ph.D. in Clinical Psychology, to examine petitioner.

On September 28, 1992, before the trial court, the petitioner expressed a desire to waive trial and enter a plea of guilty. Before accepting petitioner's plea of guilty, a competency proceeding was held. Dr. William Cooper, testified he saw petitioner on two different occasions for about five hours. He concluded petitioner clearly understood the nature of the charges against him and clearly was capable of assisting his attorney in his defense. Dr. Cooper saw no indication petitioner was not competent at the time the offense was committed, nor did he find petitioner to be mentally ill requiring treatment.[1] Petitioner's attorney also stated he believed petitioner to be competent.

Petitioner provided a factual basis for his guilty pleas to the crimes of robbery and murder by stating that on December 24, 1990, he went to the home of Hilda Johnson, an eighty-seven year old woman, with the intent to rob her. He knocked on the door and when Ms. Johnson answered it, he pushed his way into the house. After he entered the house, he took an extension cord from the Christmas tree and used it to choke Ms. Johnson. He also hit her with an iron and a piece of wood from a plant. After he believed her to be dead, petitioner searched the house for money. He took a few dollars and some change and a television set which he later pawned for $125.00.

To support the alleged former convictions, petitioner also stated he had been convicted, in the State of Florida, of the crimes of Unlawful Delivery of Marijuana, Burglary, Possession of Barbiturates, Aggravated Battery, Armed Robbery and Aggravated Battery.

After hearing the petitioner's recited factual basis, the trial court again apprised petitioner of his rights and stated petitioner was at that time allowed to withdraw all of his guilty pleas if he so desired. Being convinced petitioner was competent, fully advised of his constitutional rights, and that the petitioner had waived his right to a jury or non-jury trial and entered his pleas of guilt knowingly and voluntarily, the trial court accepted the pleas and found the petitioner guilty of the charges alleged.

At the beginning of the sentencing stage of the proceeding, petitioner advanced his intent to waive his right to have a jury determine punishment. This waiver was allowed only after the trial court determined, after inquiry of petitioner and his counsel, that it was knowingly and voluntarily made. With regard to sentencing, petitioner was specifically advised he could present evidence in mitigation. Petitioner's attorney stated petitioner did not wish to present any evidence in mitigation and this was confirmed upon further inquiry of petitioner. Over the objection of petitioner to the delay, the trial court passed the actual sentencing for two days after petitioner pled guilty, to allow him time to reconsider his decision and to withdraw his plea of guilty if he so desired.

Formal sentencing was scheduled for September 30, 1992. On this date the trial court found three of the four aggravating circumstances alleged had been proven beyond a reasonable doubt. Counsel for petitioner advised the trial court that petitioner, against counsel's advice, requested the

---

1. Dr. Cooper also testified petitioner had indicated to him that on two occasions he had been admitted to a mental health facility for observation in Florida a number of years ago, but was released after 72 hours on both occasions. The first commitment concerned a voluntary admittance for drug addiction and the second followed an impulsive and superficial suicide gesture. Petitioner confirmed that other than what Dr. Cooper had mentioned, he had never been confined to a mental institution, he had never had a court-appointed guardian to represent him in his personal affairs, and there had been no signs of mental disease in his family history.

death penalty be imposed. Defense counsel opined that petitioner was aware of the options, possibilities and the consequences of his actions. This was confirmed by the trial court upon questioning the petitioner. Thereupon, the trial court sentenced petitioner to five hundred years imprisonment on the robbery conviction and imposed the death penalty on the murder conviction. The trial court, again, asked petitioner if it was still his desire this punishment be carried out or whether he wanted to withdraw his pleas of guilty and have a jury trial, whereupon petitioner replied that he did not wish to withdraw his pleas.

The district court ordered petitioner's sentence of death be executed on December 4, 1992. A notice of execution date with an affidavit was filed by petitioner in this Court on October 21, 1992.[2] The notice asserted petitioner desired no appeal of his plea of guilty and sentence. On November 12, 1992, a motion to expedite sentence review, along with affidavits executed by petitioner's trial attorney and his appellate counsel, were filed in this Court. Petitioner asked he be allowed to waive any direct appeal by writ of certiorari and that this Court expedite its mandatory statutory review of the death sentence.

On November 23, 1992, this Court ordered petitioner's execution be stayed in order that a mandatory review of petitioner's sentence could be brought pursuant to 21 O.S.1991, § 701.13. In an order entered November 24, 1992, this Court denied petitioner's motion to expedite mandatory capital sentence review as the statutory period within which an appeal brief was due had not yet expired and no valid waiver of the right to submit such a brief had been filed in this Court.

On March 1, 1993, petitioner filed a Motion to Set Oral Argument concerning his death sentence and its propriety. This Court granted petitioner's motion to set oral argument and gave notice of oral argument to be held on April 20, 1993. In this order, we noted that the language in section 701.13 unquestionably requires a review be made by this Court whenever the death penalty is imposed. However, we also found that the language in 21 O.S. 1991, § 701.13 and 22 O.S.1991, § 1051, clearly sets forth that the Legislature intended that a direct appeal may be waived. Section 1051, directs that, "[a]n appeal to the Court of Criminal Appeals may be taken by the defendant, as a matter of right from any judgment against him, . . . ." Section 701.13(A) directs that "[w]henever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Oklahoma Court of Criminal Appeals . . . ." Section 701.13(F) adds that, "[t]he sentence review shall be in addition to direct appeal, if taken, and the review and appeal shall be consolidated for consideration . . . ." (emphasis added). We further noted the right of appeal is a privilege granted by the laws of the State to persons who are convicted of crime and the option of exercising the same, when in compliance with the statute and rules of the Court, ordinarily rests in the discretion of the party appealing. *Edmondson v. State*, 379 P.2d 866, 867 (Okl.Cr.1963). Accordingly, the parties were directed to file an oral argument statement addressing the following issues:

(1) whether Appellant is competent and has the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence;

(2) whether the evidence supports the judge's finding of a statutory aggrava-

---

**2.** Petitioner stated in his affidavit that he voluntarily entered a plea of guilty seeking the death penalty as a punishment; he wished to waive and instructed his attorney to attempt to waive any applicable statutory or constitutional impediments which may slow his execution; he wished to waive the mandatory right to appeal so that he could be executed on December 4, 1992; and, he was fully competent and under- stood the consequences of all actions taken and understood all of his rights, including appellate review, as explained to him by his attorney. Although petitioner's personal preference as to punishment is not a concern of ours and is not binding upon us, we consider his statement only as it evinces petitioner's knowing and intelligent waiver of his right to a direct appeal.

ting circumstance as enumerated in Section 701.12 of Title 21; and

(3) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Petitioner's Oral Argument Statement was filed April 7, 1993. Petitioner also filed a request that he be allowed to attend oral argument as he was anxious that the Court have an opportunity to observe him so that any questions regarding his competency or wish for a speedy execution could be answered and to demonstrate that his attorney acted only at his wish and command. This Court granted petitioner's request to attend oral argument due to the unique nature of this proceeding and the facts of this case. Oral argument, with petitioner present, was held April 20, 1993.

## DISCUSSION OF WAIVER ISSUE

■ As this Court has already determined, Oklahoma's capital statutory scheme does not mandate that a criminal defendant convicted of a capital offense take an appeal from the judgment rendered. Accordingly, the statutory right to a direct appeal of the judgment may be waived. However, when a defendant sentenced to death declines to exercise his or her statutory right to a direct appeal of the judgment, this Court will not allow such waiver absent evidence that the waiver was executed in a way which did not offend Oklahoma or Federal Constitutional principles. Because this case presents an issue of first impression in this jurisdiction, this Court must, at this juncture, ascertain the standard to be used to determine when there has been a constitutionally sound waiver of the statutory right to a direct appeal of the judgment in a capital case.

■ Because this case involves a waiver which has not previously been addressed in this jurisdiction, we have looked for guidance to other jurisdictions which have ruled on the issue. The Supreme Court of Arkansas, in *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839, 843 (1988), adopted the following standard:

[A] defendant sentenced to death will be able to forego a state appeal only if he has been judicially determined to have the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence.

This standard was recognized and left undisturbed by the United States Supreme Court in *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). It was also later adopted by Washington in *State v. Dodd*, 120 Wash.2d 1, 838 P.2d 86 (1992). The Washington Supreme Court in *Dodd* noted that, "[t]he Arkansas standard focuses attention on the critical issue in a capital case: whether the defendant has the capacity to choose between life and death and it is consistent with the competency tests other federal and other state courts approve or apply when a defendant waives appeal." *Id.* 838 P.2d at 97. Because the criteria articulated in the Arkansas standard provides more than adequate constitutional guidelines for cases such as the one now before this Court, we will apply it to the current case and future cases where a defendant convicted of a capital offense wishes to waive his or her statutory right to review of the judgment.

■ The record before this Court presents an abundance of evidence which is relevant in determining the petitioner's competency to waive his statutory right to a direct appeal of his conviction. The trial court's inquiry to ascertain the petitioner's competency began at the outset of the proceedings with the competency examination and the repeated questions posed to the petitioner regarding his understanding of the proceedings. The record reflects consistency and persistency on the part of the petitioner regarding his understanding of the proceedings and his chosen course of action. Further, the psychologist who examined the petitioner found him to be competent, as have both defense counsel, who have consistently advanced this position.

In the affidavit filed by trial defense counsel along with the motion to expedite sentence review, counsel stated petitioner was advised he could withdraw the plea of

guilty within ten days of sentencing and petitioner repeatedly stated that he did not want to withdraw his plea, but preferred to proceed with the execution. Counsel explained to petitioner that all death sentences are subject to mandatory appeal and review, and that petitioner repeatedly objected to filing an appeal and expressly requested that no appellate brief be filed. Petitioner was advised this Court was required by statute to review the record of petitioner's proceedings, plea and sentencing. Petitioner expressed a desire to proceed as quickly as possible so that the validity of petitioner's sentence could be recognized and petitioner's execution could be carried out. Counsel stated petitioner's decision to waive appeal or the filing of an appeal brief was made knowingly, intelligently and voluntarily.

The affidavit filed by petitioner's appellate counsel stated petitioner was informed of all appeal rights he would have from a plea of guilty. After petitioner's plea of guilty had been entered and after petitioner had been sentenced to death, counsel discussed with petitioner the right to appeal, petitioner's desire not to appeal, and all the consequences of such a decision. Petitioner instructed him to file a motion with this Court to waive any appeal from the plea of guilty by writ of certiorari, or any other means, and to request that petitioner be allowed to be executed on December 4, 1992. Counsel stated his belief that petitioner is competent and understands the effects of his decision. As an officer of the court, he has explained to petitioner the effects of his decisions and petitioner has knowingly, freely, intelligently and voluntarily demanded he proceed in this manner. Counsel also stated he reviewed the preliminary hearing transcript, plea and sentencing transcript, and all other pertinent documents in the case and found no error worthy of invalidating the trial court's decision. He informed petitioner of the contents of the motion to expedite and petitioner instructed him to file it immediately.

In the order issued by this Court on November 24, 1992, the petitioner's motion to waive direct appeal was remanded to the district court for a judicial determination of petitioner's competency and his capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence. On remand, a hearing was held in the District Court of Tulsa County. Findings of fact entered by the district court stated the following:

I. Thomas Joseph Grasso, the Appellant, fully understands and is competent to waive, and has waived, any right to direct appeal of the Trial Court's judgment and sentence.

II. The Appellant in fact claims no error in the proceedings requiring an appeal or appellate review.

III. The Appellant has been afforded counsel at all times, who have completely explained to him the nature and consequences of his choices.

IV. The Appellant's counselors are experienced in capital litigation, both trial and appellate, and have given the Appellant the advice necessary to make a knowing, intelligent and voluntary plea of guilty, waiver of appellate rights, and waiver of appeal.

V. The Appellant has been given the constitutional guarantees and protection of the United States Constitution, the Oklahoma Constitution, the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution, and all applicable, corollary state constitutional provisions.

VI. The Appellant's attorneys, and an impartial psychologist, have maintained at all times that the Appellant is competent to make these decisions and waivers reflected herein.

Therefore, the district court found that, "the Appellant has the capacity to understand the choice between life and death and has knowingly and intelligently waived any and all rights to appeal his judgment and sentence."

In petitioner's oral argument statement, filed April 7, 1993, he asserted the transcript of the hearing on remand proves beyond any doubt that he is sane, competent, and of above average intelligence.

He avers that he possesses not only the capacity, but does understand the difference between life and death, and he has knowingly and freely chosen death. Petitioner concludes the evidence, particularly considering his competence, intelligence and desire, is sufficient to support the death penalty. Similar information was imparted to this Court in an affidavit filed by petitioner in which he expressed his desire to be executed as soon as possible.

We find the record before this Court supports the district court's finding that the petitioner does have the capacity to understand the difference between life and death and to knowingly and intelligently waive his statutory right to a direct appeal of his judgment.

### MANDATORY SENTENCE REVIEW

■ The sentence review, which we have found to be mandatory and not subject to waiver, requires this Court to determine whether the evidence supports the aggravating circumstances found by the trial judge. 21 O.S.1991, § 701.13(C)(2). The Bill of Particulars filed against petitioner alleged four aggravating circumstances. However, the trial judge found the State only proved three aggravating circumstances to exist beyond a reasonable doubt: (1) the petitioner was previously convicted of felonies involving the use or threat of violence to the person; (2) there exists the probability that the petitioner would commit criminal acts of violence that would constitute a continuing threat to society; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.[3]

Evidence was presented, both through the testimony of the petitioner and through the introduction of documentary evidence, that petitioner had been previously convicted of felonies involving the use or threat of violence to the person. The State presented judgments and sentences showing petitioner had been convicted of the crime of Aggravated Battery on July 3, 1985, Case

No. 84–1217, in the Circuit Court of Hillsborough County, State of Florida, and that he was convicted of Armed Robbery and Aggravated Battery on July 3, 1985, Case No. 85–25, in the Circuit Court of Hillsborough County, State of Florida.

The aggravated battery convictions were pursuant to Fla.Stat. § 784.045 (1981), and the robbery conviction came under Fla.Stat. § 812.13(2)(a) (1981). Both of these offenses are considered felonies in Florida. Because the elements of the Florida robbery statute under which the petitioner was convicted are substantially similar to 21 O.S.1991, § 801, an Oklahoma robbery statute which also is a felony, it is clear that petitioner's Florida robbery conviction would also be a felony conviction in Oklahoma.

■ The analysis with regard to Florida's aggravated battery statute is not as conclusive. Florida's section 784.-045(1)(a)(2) provides that a person who commits a battery using a deadly weapon is guilty of a felony in the second degree. This act, in Oklahoma would also be considered a felony under 21 O.S.1991, § 645. However, Florida's section 784.045(1)(a)(1) further provides a person who commits a battery and intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement is guilty of a felony in the second degree. This act alone, in Oklahoma would most likely be considered a misdemeanor under 21 O.S.1991, § 646. Thus, because no facts were presented to indicate under which section of 784.045 petitioner was convicted in Florida, it is not at all clear whether the two aggravated battery convictions would have been prosecuted as felonies in Oklahoma. However, because it is clear petitioner's robbery conviction would have been considered a felony in Oklahoma, this prior violent felony conviction supports this aggravating circumstance. Thus, when considering the Florida robbery conviction and the New York murder conviction,

---

**3.** The trial judge found that the State failed to prove, beyond a reasonable doubt, that the mur-

der was especially heinous, atrocious and cruel.

which is discussed below, it is clear that these two prior violent felony convictions sufficiently supported the trial judge's finding of this aggravating circumstance beyond a reasonable doubt.[4]

In support of the second alleged aggravating circumstance, that there was a probability petitioner would commit criminal acts of violence that would constitute a continuing threat to society, the trial court admitted into evidence a video taped statement made by the petitioner regarding a murder petitioner had committed in New York on July 3, 1991, after commission of the murder in the present case. This statement, which was admitted as State's exhibit number eight, revealed that on this date petitioner lived across the hall from eighty-two year old Leslie Holt in a rooming house in Staten Island, New York. Petitioner had been smoking crack cocaine and went to ask Mr. Holt for some money so that he could get more cocaine. When petitioner left his room, he observed Mr. Holt in the hall attempting to enter his own room. When Mr. Holt unlocked his door, petitioner pushed him into his room, grabbed him around the neck and then choked him with the cord from the TV until Mr. Holt was dead. Petitioner and a friend, who had come from petitioner's room, then took money from Mr. Holt. We further note that Dr. Cooper, after examining the petitioner, had expressed to the trial court concern about petitioner's potential dangerousness in the future if released, in light of petitioner's murder conviction in the State of New York. We find that this evidence, along with evidence of petitioner's prior convictions in the State of Florida, including those for aggravated battery as well as the robbery conviction, supports the trial

court's finding that the State proved beyond a reasonable doubt that petitioner constitutes a continuing threat to society.[5]

At the hearing on the guilty plea the petitioner, in his recitation of the events surrounding the murder of Hilda Johnson, provided evidence which supported the third alleged aggravating circumstance, that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. While telling the court what had happened, the petitioner specifically stated, "[a]fter I had entered her house, it dawned on me that if I left her alive I would be identified by the police and by her and I would be arrested so we had—we struggled a little bit and I had pulled the extension cord off the Christmas tree and I wrapped it around her neck and choked her." (TR. 27) This evidence satisfies the trial court's finding that this aggravating circumstance was proven beyond a reasonable doubt.

Finally, pursuant to the mandates of 21 O.S.1991, § 701.13(C)(1), this Court must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. The record reflects the district court gave petitioner every opportunity to assert his rights to a jury trial and gave him plenty of time to consider each of his decisions. The court did a very thorough job of making sure petitioner knew what he was doing in pleading guilty, and of establishing that there was a factual basis for the murder plea. After finally accepting petitioner's pleas and finding him guilty, the court then made sure petitioner had read the Bill of Particulars and understood his rights to a second stage proceeding. Even after the State presented its evidence

---

4. It does not matter for purposes of this aggravating circumstance that the New York murder was actually committed after the murder in the present case. Rather, it is significant that the New York conviction occurred prior to the sentencing hearing in the present case. The statutory language of 21 O.S.1991, § 701.12(1) concerning this aggravating circumstance provides that such can be found to exist where, "[t]he defendant was previously convicted of a felony involving the use or threat of violence to the person...." (emphasis added)

5. Although, for the reasons discussed above, the Florida aggravated assault convictions could not be used to support the aggravating circumstance of prior violent felonies, these convictions do show petitioner's propensity toward violence and as such can be used to support the conclusion that petitioner poses a continuing threat to society.

in aggravation and defense counsel presented no evidence in mitigation pursuant to the petitioner's wishes, the court recessed for two days stating, "this is something that should not be taken hastily, but only after sincere consideration and reflection of all of the evidence that's been presented and the law covering this case." The district court was abundantly careful to protect the petitioner's rights in this case giving petitioner every opportunity to withdraw his pleas and to present evidence on his own behalf. Further, as we have already determined, the aggravating circumstances which were found by the trial court to exist, were appropriately found to have been proven beyond a reasonable doubt. The refusal of the trial court to find the existence of the fourth alleged aggravating circumstance evinces the court's careful deliberation and conservative judgment. Accordingly, we find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

In light of the foregoing discussion, we find that the petitioner's waiver of his right to a direct appeal of his judgment was made knowingly, intelligently and voluntarily, in compliance with federal and state constitutional mandates. We further find that the sentence of death imposed upon the petitioner was based upon aggravating circumstances that were readily supported by the evidence. The sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

In light of the foregoing, the judgment and sentence is AFFIRMED.

LUMPKIN, P.J., and JOHNSON, V.P.J., concur.

CHAPEL, J., specially concurs.

CHAPEL, Judge, specially concurring:

Under the unique facts of this case, I conclude Thomas Grasso's conviction and sentence of death should be affirmed. However, I am concerned about the issues raised by this case and the impact that this case will have on future cases. Although Grasso's desire to be executed may seem unusual, this case is not unique.[1] Over ten percent of the executions in the United States since 1976 have been carried out on individuals who, at some point, elected to die. *State v. Dodd*, 120 Wash.2d 1, 838 P.2d 86, 103 (1992); Dieter, *Ethical Choices for Attorneys Whose Clients Elect Execution*, 3 Geo.J.Legal Ethics 799, 800 (1990). Because this case raises difficult and troubling issues, I specially concur to explain my concerns and address the problems raised when a defendant, who having been convicted of First Degree Murder, seeks the imposition of the death penalty.

The first area of concern is the issue of a defendant's competency to waive his appeals and seek the imposition of the death penalty. By waiving his discretionary appeal, a defendant will expedite and may render certain the imposition of death. Such a waiver begs the question of the defendant's competence and the permanence of his decision. As former Pennsylvania Supreme Court Justice Musmanno once noted:

It can be stated as a universal truth stretching from nadir to zenith that regardless of circumstances, no one wants to die. Some person may, in an instant of spiritual or physical agony express a desire for death as an anodyne from in-

---

1. *See e.g. Lenhard v. Wolff*, 444 U.S. 807, 100 S.Ct. 29, 62 L.Ed.2d 20 (1979); *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976); *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966) (per curiam); *Hays v. Murphy*, 663 F.2d 1004 (10th Cir.1981); *Davis v. Austin*, 492 F.Supp. 273 (N.D.1980); *State v. Brewer*, 170 Ariz. 486, 826 P.2d 783 (1992); *State v. Dodd*, 120 Wash.2d 1, 838 P.2d 86 (1992); *Franz v. Arkansas*, 296 Ark. 181, 754 S.W.2d 839 (1988); *State v. Hightower*, 214 N.J.Super. 43, 518 A.2d 482 (1986); *State v. Felde*, 422 So.2d 370 (La.1982); *People v. Chadd*, 28 Cal.3d 739, 621 P.2d 837, 170 Cal.Rptr. 798 (1981); *Goode v. State*, 365 So.2d 381 (Fla.1978); *Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174 (1978). *See also* W.S. White, *Defendants who Elect Execution*, U.Pitt.L.Rev. 853 (1987); G.R. Stafer, *Volunteering for Execution: Competency, Voluntariness and the Propriety of Third Party Intervention*, 74 J.Crim.L. & Criminology 860 (1983); T. Kaine, *Capital Punishment and the Waiver of Sentence Review*, 18 Harv.C.R.–C.L.L.Rev. 483 (1983).

tolerable pain, but the desire is never full-hearted because there is always the reserve of realization that the silken cord of life is not broken by a mere wishing. There is no person in the actual extremity of dropping from the precipe of life who does not desperately reach for a crag of time to which to cling even for a moment against the awful eternity of silence below. With all its "slings and arrows of outrageous fortune," life is yet sweet and death is always cruel.

*Commonwealth v. Elliott,* 371 Pa. 70, 89 A.2d 782, 787 (1952) (Musmanno, J., dissenting).

Given the basic human desire to live in spite of tremendous adversity and difficulties, a defendant's decision to be executed is fraught with questions and concerns. Commentators have noted that it is not unusual for a defendant facing the death penalty to at some point express the desire to die only to recant that desire later. White, *supra* at 853–861; Kaine, *supra* at 487 n. 14; Strafer, *supra* at 874 n. 54. *See e.g. Potts v. Zant,* 638 F.2d 727 (5th Cir. 1981). When ultimately facing death most people agree with the observations of Claudio in Shakespeare's *Measure for Measure:*

The weariest and most loathed worldly life

That age, ache, penury, and imprisonment

Can lay on nature is a paradise

To what we fear of death.

W. Shakespeare, *Measure for Measure,* act III, scene i, li. 129–133. *See* White, *supra* at 871–872.

Further, the State of Oklahoma has a keen interest in assuring that its system of justice is not being manipulated or abused by a defendant. The State must not become an unwitting partner in a defendant's suicide by placing the personal desires of the defendant above the societal interests in assuring that the death penalty is imposed in a rational, non-arbitrary fashion. *See Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174, 181 (1978) (in refusing to allow execution of defendant who was sentenced to death under an invalid death penalty statute, the court noted a defendant's right to waive certain rights "was never intended as a means for allowing a criminal defendant to choose his own sentence. Especially is this so where, as here, to do so would result in state aided suicide").

The State's interest in assuring the rational and appropriate application of the death sentence and Grasso's interest in asserting his personal desire to waive his appeal must be balanced. Although the consequences and risks that attend waiving an appeal in a capital case are high, a defendant should not be precluded from waiving his discretionary appeals. In other contexts, a competent defendant's ability to waive his rights is well recognized. For example, under appropriate circumstances, a defendant may waive his right to counsel, *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), he may waive his right to silence, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and he may waive trial by pleading guilty to an offense. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1972).

I agree with the majority that a capital defendant may waive his statutory right to a direct appeal, although he may not waive his right to the mandatory sentence review. I also agree with the majority that the standard for determining whether a capital defendant is competent to waive his direct appeal is whether (1) the defendant has the capacity to understand the choice between life and death, and (2) the defendant has the capacity to knowingly and intelligently waive any and all rights to appeal his sentence. My concern is with the application of this standard to Grasso and future criminal defendants seeking to waive their capital appeals.

The Washington Supreme Court in *State v. Dodd,* 120 Wash.2d 1, 838 P.2d 86, 95, 100 (1992), employed the competency standard, which we adopt today, that to determine if a capital defendant is competent to waive his discretionary appeals the court must examine whether the defendant understands and appreciates the choice between life and death and knowingly and

intelligently waives any and all rights to appeal his sentence. In *Dodd,* after defendant was sentenced to death, he stated he wished to waive his discretionary appeal and submit only to the mandatory sentence review. The court assigned new counsel to represent defendant on appeal and allowed defendant's trial counsel to act as amicus curiae. The court then ordered a fact finding hearing to determine Dodd's competency to waive his appeal. Two doctors testified that Dodd was oriented, did not possess any thought disorder, and did not suffer from hallucinations. One of the doctors opined an individual can rationally choose to die and Dodd had rationally made that choice. The other doctor stated he found Dodd understood the proceedings against him and the consequences of waiving his appeal. A social worker, who had met with Dodd on several occasions, also testified that Dodd was coherent, intelligent, and free from delusion. She concluded Dodd was competent, understood he faced a sentence of death and he could assist in his defense. Dodd also testified the proceedings were fair, he understood he could die if he waived his appeals, and he accepted the reality of his death. Dodd's appellate counsel also stated Dodd was competent, had weighed his options, and had rationally chosen death. The trial court, based on its observations of Dodd, agreed Dodd was competent to waive his appeal. The Washington Supreme Court found the record supported the conclusion that Dodd was competent to waive his appeal.

In another case concerning competency, *Hays v. Murphy,* 663 F.2d 1004 (10th Cir. 1981), the Tenth Circuit addressed whether an Oklahoma defendant, who had been convicted of murder and sentenced to death, was competent to waive further appeals after this Court affirmed Hays' conviction and sentence of death. Hays' mother argued in federal court that her son was not competent to waive further appeals. In determining Hays' competency, the Tenth Circuit looked at whether Hays had the " 'capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or

on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.' " *Id.* at 1008, *quoting, Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966). Using this standard, the Tenth Circuit found that the psychiatric examinations Hays had undergone were insufficient to determine the question of competency. The examiners had met with Hays for only a brief period of time, and there was a significant lack of psychological tests being administered. Further, the Tenth Circuit found there were serious questions regarding Hays' competency based on his history of mental commitments, his suicidal tendencies, his lengthy alcoholism, the possibility he had suffered a concussion, and evidence he experienced delusions. At least one psychologist noted that Hays understood that he was to be executed but that he did not understand that he was going to die. *Id.* at 1010 n. 11. Based on the lack of an adequate psychological examination and Hays' past mental health problems, the court stayed Hays' execution and remanded the case to the district court so that Hays could undergo further psychological testing.

Reviewing the factors and evidence other courts have relied upon to determine the competency of a capital defendant to waive his appeals provides a useful guide to this Court. A competency evaluation should address the defendant's ability to truly comprehend his own death. The examiner should determine whether the defendant understands all of his options and that his perception of those options is rational, coherent, and based on reality. The defendant's mental health history and I.Q. should be closely scrutinized. Any suicidal or paranoid tendencies, which may distort the defendant's ability to make a rational decision, should be addressed and carefully examined. It seems the competency examination, as best as is possible, should also address the possibility that the defendant may change his mind. Thus, it seems that once a defendant decides to waive his appeals, a separate and independent evalua-

tion of the defendant should be conducted to address the unique issues surrounding competency to waive capital discretionary appeals as set out in the competency standard we adopted today.

In reviewing the record in this case and the observations that this Court has made of Grasso, I agree with the majority that Grasso is competent to waive his discretionary appeal. The factors that persuade me are the consistent, across-the-board opinion that Grasso is competent, Grasso's statements to the lower court and this Court, and Dr. Cooper's observations that Grasso is coherent, free of delusional thought, and of average intelligence. I am troubled by the prior superficial suicide attempt by Grasso and by the lack of a separate and independent evaluation devoted solely to the issue of his competency to waive his appeals. However, because there is nothing in the record to suggest that Grasso is not wholly and completely competent to waive his appeal, I concur in the Court's judgment.[2]

Nonetheless, many individuals facing the death penalty may very well be burdened by mental or emotional problems that would render them incompetent to waive their appeals. For example, the record in this case would hardly be adequate for an individual who was borderline mentally retarded and sought to waive an appeal of his death sentence. Nor would the record before us today be adequate for someone with a history of mental illness or who had been diagnosed with a mental illness such as paranoid schizophrenia. The cursory record prepared in this case may very well be rejected in the next case in which a person facing the sentence of death seeks to waive his appeal so that he can die. I conclude that a separate competency evaluation conducted by an appropriate mental health professional should be conducted to specifically determine competency to waive one's appeals.

Further, in my view, a waiver of a discretionary capital appeal must be viewed with great caution. This Court is obligated to ensure that the death penalty be carried out only in a rational manner which comports with the Oklahoma and federal constitutions. Simply because a defendant chooses to waive his sentence of death does not mean that this Court is obligated to carry out the defendant's wishes. *See Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174 (1978). This Court must examine a capital defendant's attempt to waive his discretionary appeals and, in any event, the mandatory sentence review must be conducted.

In addition, I am greatly concerned about the possibility that a defendant could manipulate the judicial system and on the eve of the execution change his mind and seek review in federal court claiming incompetence, ineffective assistance of counsel, and a whole myriad of other issues.[3] By carefully assuring on the record that the defendant is competent and that he is knowingly, voluntarily and intelligently waiving his appeal, this potential problem will be minimized.

As to the mandatory sentence review, I also agree that the evidence presented below supports the imposition of the sentence

---

2. It should be noted that the mental health evaluation of Grasso was conducted to determine his competency to stand trial rather than his competency to waive his appeals. Because of the overwhelming evidence of Grasso's competency, the competency examination conducted in this case is sufficient. *See Godinez v. Moran*, — U.S. —, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (Supreme Court found once defendant is determined competent to stand trial due process does not require separate competency examination to determine defendant's competency to waive his right to counsel).

3. A further concern is the syndrome that commentators call the "murder-suicide" phenome-

non which "refers to the clinically recognized syndrome in which an individual intentionally commits murder in a state with a death penalty hoping that, once caught, the State will execute him and thereby accomplish [the suicide that] he himself cannot bring about by his own hand." Strafer, *supra* at 863 n. 12. *See* White, *supra* at 871–877. The classic case is James French who was executed by Oklahoma in 1966 for the murder of his prison cell mate. According to some commentators, French was unable to carry out his own suicide. French's motive in murdering his cell mate was to force the State to execute him. Strafer, *supra* at 864–866; White, *supra* at 871–877.

of death.[4] However, I feel that allowing amicus curiae to participate would have aided the Court in its review of Grasso's sentence. Nonetheless, based on the record before this Court, I agree that the imposition of the sentence of death was proper in this case.[5]

In conclusion, I believe Grasso can waive his right to appeal and he is competent to waive that appeal. However, the State of Oklahoma's interest in assuring that the death penalty is applied in a rational, non-arbitrary fashion outweighs the interests of Grasso. Safeguards must be implemented to assure that the State of Oklahoma is not simply assisting in someone's death wish and to assure that an incompetent person is not rushed through the system and put to death. Because the evidence demonstrates Grasso is competent to waive his appeal and the imposition of the death sentence was proper, I concur in the judgment of the Court.

---

**4.** It is possible that a defendant's effort to have the death sentence imposed upon him could, in and of itself, constitute an arbitrary factor rendering the death sentence invalid. *See Lenhard v. Wolff,* 444 U.S. 807, 100 S.Ct. 29, 62 L.Ed.2d 20 (1979) (Marshall, J., dissenting); White, *supra* at 866. Although I do not find that Grasso's actions inserted an improper and arbitrary element into the sentencing process in this case, there may be cases in the future where this would be a problem.

**5.** During the sentencing phase below, Grasso instructed his attorneys not to put on any mitigating evidence. One commentator has argued, and at least one court has found, that absence of mitigating evidence distorts the sentencing pro-

cess and prevents the imposition of a rational, non-arbitrary sentence. L.E. Carter, *Maintaining Systemic Integrity In Capital Cases: The Use of Court–Appointed Counsel to Present Mitigating Evidence When the Defendant Advocates Death,* 55 Tenn.L.Rev. 95, 106, 116–129 (1987); *State v. Hightower,* 214 N.J.Super. 43, 518 A.2d 482 (App.Div.1980). In spite of the serious concerns raised by waiving mitigating evidence, I believe that the right can be waived. However, I believe that the waiver should be clear and on the record and that the trial court must make a determination that the defendant is competent to waive the presentation of mitigating evidence.