# Supreme Court of Florida

_____

No. SC17-1071
_____

**NORMAN MEARLE GRIM,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[March 29, 2018]

PER CURIAM.

Norman Mearle Grim, a prisoner under sentence of death, appeals the circuit court's order summarily denying his first successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

In 2000, a jury convicted Grim of first-degree murder and sexual battery upon a person twelve years of age or older with use of a deadly weapon. After hearing evidence at the penalty phase, the jury unanimously recommended the death sentence by a vote of twelve to zero. We affirmed Grim's convictions and sentence of death on direct appeal. *Grim v. State*, 841 So. 2d 455 (Fla. 2003). We

also upheld the denial of his initial motion for postconviction relief and denied his petition for a writ of habeas corpus. *Grim v. State*, 971 So. 2d 85 (Fla. 2007).

In June 2016, Grim filed his current first successive postconviction motion in which he sought relief based on *Hurst v. Florida* (*Hurst v. Florida*), 136 S. Ct. 616 (2016). Grim subsequently filed a memorandum of law in which he further argued that he was entitled to relief based on this Court's decision in *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017). In May 2017, the circuit court entered an order summarily denying Grim's successive postconviction motion. This appeal followed. While Grim's postconviction case was pending in this Court, we directed the parties to file briefs addressing why the circuit court's order should not be affirmed based on this Court's precedent in *Hurst*, *Davis v. State*, 207 So. 3d 142 (Fla. 2016), *cert. denied*, 137 S. Ct. 2218 (2017), and *Mosley v. State*, 209 So. 3d 1248 (Fla. 2016).

In *Davis*, this Court held that a jury's unanimous recommendation of death is "precisely what we determined in *Hurst* to be constitutionally necessary to impose a sentence of death" because a "jury unanimously f[inds] all of the necessary facts for the imposition of [a] death sentence[] by virtue of its unanimous recommendation[]." *Davis*, 207 So. 3d at 175. This Court has consistently relied on *Davis* to deny *Hurst* relief to defendants that have received a unanimous jury recommendation of death. *See, e.g.*, *Bevel v. State*, 221 So. 3d 1168, 1178 (Fla.

2017); *Guardado v. Jones*, 226 So. 3d 213, 215 (Fla. 2017), *petition for cert. filed*, No. 17-7171 (U.S. Dec. 18, 2017); *Cozzie v. State*, 225 So. 3d 717, 733 (Fla. 2017), *petition for cert. filed*, No. 17-7545 (U.S. Jan. 24, 2018); *Morris v. State*, 219 So. 3d 33, 46 (Fla.), *cert. denied*, 138 S. Ct. 452 (2017); *Tundidor v. State*, 221 So. 3d 587, 607-08 (Fla. 2017), *cert. denied*, 138 S. Ct. 829 (2018); *Oliver v. State*, 214 So. 3d 606, 617-18 (Fla.), *cert. denied*, 138 S. Ct. 3 (2017); *Middleton v. State*, 220 So. 3d 1152, 1184-85 (Fla. 2017), *cert. denied*, 138 S. Ct. 829 (2018); *Truehill v. State*, 211 So. 3d 930, 956-57 (Fla.), *cert. denied*, 138 S. Ct. 3 (2017).  Grim is among those defendants who received a unanimous jury recommendation of death, and his arguments do not compel departing from our precedent.[1]

Accordingly, because we find that any *Hurst* error in this case was harmless beyond a reasonable doubt, we affirm the circuit court's order summarily denying Grim's first successive motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and LEWIS and LAWSON, JJ., concur.
CANADY and POLSTON, JJ., concur in result.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.

---

1. The fact that Grim declined to present mitigation to the jury during the penalty phase has no bearing here.  Grim's waiver of that right was valid, and he "cannot subvert the right to jury factfinding by waiving that right and then suggesting that a subsequent development in the law has fundamentally undermined his sentence."  *Jones v. State*, 212 So. 3d 321, 343 n.3 (Fla.) (quoting *Mullens v. State*, 197 So. 3d 16, 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 672 (2017)), *cert. denied*, 138 S. Ct. 175 (2017).

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., dissenting.

The majority relies on the jury's unanimous recommendation for death to determine that the *Hurst*[2] error is harmless beyond a reasonable doubt. However, for the same reasons set forth in my concurring in part, dissenting in part opinion in *Kaczmar v. State*, 228 So. 3d 1 (Fla. 2017), *petition for cert. filed*, No. 17-8148 (U.S. Mar. 14, 2018), I would reverse for a new penalty phase because the jury was not presented with any evidence of the significant mitigation in Grim's case, which the trial judge subsequently heard, before making its recommendation. Due to the jury's critical role in capital sentencing after *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Hurst*, unless the defendant waives his right to a penalty phase jury, available mitigation must be presented to the jury.

**FACTS**

After being convicted of first-degree murder and sexual battery upon a person twelve years of age or older with the use of a deadly weapon, Grim "insisted on not presenting any mitigation" to the jury during the penalty phase. *Grim v. State* (*Grim I*), 841 So. 2d 455, 459 (Fla. 2003). Grim explained to the

2. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).

- 4 -

trial judge at the *Koon*[3] hearing that he would rather receive the death penalty than spend the rest of his life in prison. After a penalty phase, in which the jury did not hear any evidence of mitigation, the jury unanimously recommended that Grim be sentenced to death. *Id.*

Despite the absence of mitigating evidence, pursuant to this Court's opinion in *Muhammad v. State*, 782 So. 2d 343 (Fla. 2001), the trial court was obligated to determine the existence of mitigation anywhere in the record and had the discretion to appoint special counsel to present mitigation. *Id.* at 364-65. Accordingly, the trial court appointed special counsel to present available mitigating evidence at the *Spencer*[4] hearing.

After the *Spencer* hearing, the trial court found three aggravating factors, three statutory mitigating circumstances, and five nonstatutory mitigating circumstances. *Grim I*, 841 So. 2d at 460. The three statutory mitigating circumstances were: (1) disruptive home life and child abuse; (2) hard-working employee; and (3) mental health problems that did not reach the level of section 921.141(6)(b), Florida Statutes (1997). *Id.* The nonstatutory mitigating circumstances were: "(1) lack of long-term psychiatric care"; (2) "marital problems

---

3. *Koon v. Dugger*, 619 So. 2d 246 (Fla. 1993).

4. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

- 5 -

and situational stresses"; (3) "errors of judgment under stress"; (4) "model prison inmate"; and (5) "entered prison at a young age." *Id.*

As to statutory mental mitigation, the trial court's sentencing order explained that the evidence presented by special counsel—which included the deposition testimony of psychologist Dr. James Larson and a 1983 psychiatric evaluation by Dr. B. R. Ogburn—established the following: (1) Grim "suffers from an impulse-control disorder known as 'intermittent explosive disorder' along with a depressive disorder"; (2) a diagnosis of "antisocial personality disorder"; (3) a diagnosis of "having a '[p]ersonality disorder, mixed type with avoidant, antisocial and passive-aggressive features' "; and (4) at the time of the murder, Grim "was taking two medications, Prozac and Depakote, which were targeted for the intermittent explosive disorder," however the impact of the medications was not established.[5]

As to other statutory mitigating circumstances, the trial court determined that Grim (1) "had a disruptive home life," which "certainly had an impact upon him," (2) had a "shining" employment background since returning to Northwest Florida on parole from Texas; (3) had "a history of alcohol usage," which included being

---

5. The sentencing order stated that although "Dr. Larson was comfortable in saying the murder did *not* occur while the Defendant was 'experiencing psychosis in the sense of responding to delusions or hallucinations,' . . . Dr. Larson could not rule out some kind of drug interaction with the Defendant's disorders."

"discharged from the military for substance related charges," and (4) "suffers from significant, long-term mental problems." This Court's case law makes clear "the importance and significance of this kind of mitigation evidence." *Williams v. State*, 987 So. 2d 1, 14 (Fla. 2008).

As to nonstatutory mitigating circumstances, the trial court determined that Grim (1) received psychiatric care in 1983; (2) "was in the throes of a divorce at the time of this murder" and "had even sought legal advice from his victim"; (3) makes " 'appalling errors of judgment' when under stress"; (4) had "been a model inmate . . . for over two years while awaiting trial"; and (5) "was first confined for a short time while in the Navy" at twenty-two years old. After weighing the aggravation and mitigation and "duly consider[ing] the jury recommendation," the trial court sentenced Grim to death.

On direct appeal, consistent with *Muhammad*, this Court denied Grim's claim that the trial court should have required special counsel to present mitigation evidence to the penalty phase jury, stating: "We . . . continue to hold that a trial court should not be required to appoint special counsel for purposes of presenting mitigating evidence to a penalty phase jury if the defendant has knowingly and voluntarily waived the presentation of such evidence." *Grim I*, 841 So. 2d at 461. In my specially concurring opinion, I wrote that "I would adopt a uniform procedure requiring the appointment of special counsel to present available

mitigation." *Id.* at 465 (Pariente, J., specially concurring). This kind of procedure has yet to be adopted.

## ANALYSIS

In 1978, in *Goode v. State*, 365 So. 2d 381 (Fla. 1978), this Court stated:

> [E]ven though [the defendant] expressed a desire to be executed, this Court must, nevertheless, examine the record to be sure that the imposition of the death sentence complies with all of the standards set by the Constitution, the Legislature and the courts.

*Id.* at 384. Subsequently, the Court set forth various procedures for doing so but, as explained above, left any presentation of mitigating evidence beyond the presentence investigation report to the trial court's discretion. *Muhammad*, 782 So. 2d at 364.

Concurring specially in *Muhammad*, I set forth a proposed procedure for trial courts appointing special counsel to present mitigation to the jury when a defendant waives the same:

> Because of the tremendous responsibilities placed on the trial court and this Court in death penalty cases, rather than leave the appointment of counsel to the trial court's discretion on a case-by-case basis, *I would thus adopt a prospective rule that would provide for the appointment of special counsel to present available mitigation for the benefit of the jury*, the trial court and this Court in order to assist the judiciary in performing our statutory and constitutional obligations.

*Id.* at 370 (Pariente, J., specially concurring) (emphasis added).

In 2017, on remand from the United States Supreme Court's decision in *Hurst v. Florida*, this Court made clear in *Hurst* that the death penalty "must be

- 8 -

reserved only for defendants convicted of the most aggravated and *least mitigated* of murders," as determined by a jury. 202 So. 3d at 60 (emphasis added). Therefore, "*Hurst* changed the calculus for waiving the presentation of some or all of the mitigating evidence to a jury." *Kaczmar*, 228 So. 3d at 16 (Pariente, J., concurring in part and dissenting in part). Thus, in light of *Hurst v. Florida* and *Hurst*, which "clearly changed the dynamics between the judge and the jury in Florida capital sentencing," *id.*, this Court should adopt a "prospective rule that would provide for the appointment of special counsel to present available mitigation for the benefit of the jury," whose role we now know is critical to the constitutional imposition of the death penalty. *Muhammad*, 782 So. 2d at 370 (Pariente, J., specially concurring).

Regardless of whether this Court alters the requirements of *Muhammad*, it is clear that trial courts and litigants have an independent obligation to ensure that the jury, as sentencer, receives all the necessary information to make the constitutionally required findings of fact before recommending a sentence of death. *See Hurst*, 202 So. 3d at 44. Those findings, of course, include finding unanimously the existence of each aggravating factor, the sufficiency of the aggravators to impose death, that the aggravation outweighs the mitigation, and, finally, a unanimous vote that death is the appropriate sentence. *See id.*

Aside from addressing this issue prospectively, the question arises how a defendant waiving mitigation affects whether a *Hurst* error is harmless beyond a reasonable doubt. As I explained in *Muhammad*, "[a]lthough the defendant may have a right to plead guilty, the defendant has no corresponding 'right' after conviction to have the death penalty imposed based on a waiver of the right to present mitigation." 782 So. 2d at 369 (Pariente, J., specially concurring). Further, "it is not necessarily those most deserving of the death penalty . . . who seek its imposition and refuse to present mitigation. Rather, in some cases, those seeking the death penalty, while competent, may suffer from serious underlying mental illnesses." *Id.* In fact, whether a defendant suffers from such mental illness is exactly the type of mitigation that would be appropriately presented by special counsel, as the trial court's sentencing order in this case reflects.

As the United States Supreme Court stated in *Porter v. McCollum*, 558 U.S. 30 (2009), "the Constitution requires that 'the sentencer in capital cases must be permitted to consider any relevant mitigating factor.' " *Id.* at 42 (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982)). Likewise, it is clear that a jury not apprised of mitigating evidence cannot properly make all of the requisite findings of fact required to constitutionally impose death—namely, that the aggravation outweighs the mitigation and, further, that death is an appropriate sentence. *See Hurst*, 202 So. 3d at 40-42. In *Hurst*, this Court stated that "[i]f death is to be

imposed, unanimous jury sentencing recommendations, when made in conjunction with the other critical findings unanimously found by the jury, provide the highest degree of reliability in meeting these constitutional requirements in the capital sentencing process." *Id.* at 60. Therefore, the *Hurst* error cannot be harmless beyond a reasonable doubt in a case where mitigating evidence existed but was not presented to the penalty phase jury. *See Kaczmar*, 228 So. 3d at 16-17 (Pariente, J., concurring in part and dissenting in part).

## THIS CASE

*Hurst* applies retroactively to Grim's sentence of death, which became final in 2003. *See Mosley v. State*, 209 So. 3d 1248, 1283 (Fla. 2016). Although the trial court appointed special counsel to present mitigation at the *Spencer* hearing and recognized in its sentencing order that the penalty phase jury did not have the benefit of hearing mitigation, I cannot conclude, in light of *Hurst*, that the lack of mitigation was remedied. The jury in Grim's case was left with no choice but to recommend death because they did not hear any evidence of mitigation. Thus, the jury's unanimous recommendation for death in Grim's case is unreliable and cannot support the conclusion that the *Hurst* error is harmless beyond a reasonable doubt.

## CONCLUSION

For the reasons fully explained above, I cannot conclude that the *Hurst* error was harmless beyond a reasonable doubt and would, therefore, reverse and remand for a new penalty phase.

Accordingly, I dissent.

QUINCE, J., concurs.

An Appeal from the Circuit Court in and for Santa Rosa County,
Ross M. Goodman, Judge - Case No. 571998CF000510XXAXMX

Billy H. Nolas, Chief, Capital Habeas Unit, Office of the Federal Public Defender, Northern District of Florida, Tallahassee, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, and Lisa A. Hopkins, Assistant Attorney General, Tallahassee, Florida,

for Appellee