# Supreme Court of Florida

_____

No. SC13-2247
_____

**LEO LOUIS KACZMAR, III,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[January 31, 2017]

PER CURIAM.

Leo Louis Kaczmar, III, appeals his sentence of death imposed after a new

penalty phase proceeding. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

For the following reasons, we affirm Kaczmar's sentence of death.

## STATEMENT OF THE CASE AND FACTS

We previously set forth the relevant facts in Kaczmar v. State, 104 So. 3d

990, 995-98 (Fla. 2012). Kaczmar was convicted for first-degree murder,

attempted sexual battery, and arson. During Kaczmar's first penalty phase, the

parties stipulated that Kaczmar had been previously convicted of a robbery. Id. at 997. The State presented a victim impact statement from Ruiz's brother. Id. The defense presented testimony from Kaczmar's family and friends that depicted Kaczmar as a good person who had a troubled upbringing due to his father's abuse. Dr. Miguel Mandoki, a child psychiatrist, testified that Kaczmar was traumatized as a child by his father's alcoholism and his own chronic drug abuse. Id. Dr. Mandoki also testified that although he believed Kaczmar to be competent during trial, he did not think Kaczmar knew what he was doing on the night of the murder and did not know right from wrong. Id. At the end of the penalty phase, the jury recommended a sentence of death by a vote of eleven to one. Id.

During the first Spencer[1] hearing, neither the State nor the defense presented testimony. Id. at 998. In the trial court's sentencing order, the court found four statutory aggravating factors.[2] Id. The trial court also found fourteen mitigating

---

1. Spencer v. State, 615 So. 2d 688 (Fla. 1993).

2. The trial court found the following aggravating circumstances: (1) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment or placed on community control or felony probation; (2) the capital felony was committed while Kaczmar was engaged in the commission of or an attempt to commit a sexual battery; (3) the capital felony was especially HAC; and (4) the crime was committed in a cold, calculated, and premeditated (CCP) manner, without any pretense of moral or legal justification.

factors.[3] The trial court concluded that the aggravating circumstances outweighed the mitigation and imposed a sentence of death. Id.

Kaczmar raised nine issues on direct appeal.[4] Id. We affirmed Kaczmar's convictions, held that the trial court erred in finding the CCP and committed during

---

3. The fourteen mitigating factors were: (1) Kaczmar was raised by an alcoholic father; (2) Kaczmar was raised by a physically and emotionally abusive father; (3) Kaczmar was emotionally traumatized as a child when he witnessed his grandfather's drowning and his mother's shooting of his father; (4) Kaczmar had been taught to lie in court; (5) Kaczmar lacked a normal mother-son bonding and relationship; (6) Kaczmar is kind to animals; (7) Kaczmar is a loyal friend; (8) Kaczmar is a good, reliable business partner; (9) Kaczmar had a loving relationship with his aunt, Cathy Casleton; (10) Kaczmar was protective of younger family members; (11) Kaczmar suffered long-term effects of illegal drug use; (12) Kaczmar was impaired by his use of illegal drugs on the evening of the murder; (13) Kaczmar suffered from an absence of professional mental health counseling and treatment; and (14) Kaczmar showed respectful behavior in court.

4. The nine issues were: (1) whether the trial court properly denied the motion for judgment of acquittal regarding attempted sexual battery; (2) whether the trial court abused its discretion by allowing the State to call the defendant's wife to testify regarding a plan to fabricate evidence; (3) whether the trial court committed fundamental error by not sua sponte giving a special jury instruction on the heat of passion defense; (4) whether the trial court abused its discretion in limiting closing arguments by preventing defense counsel from reading language of opinions to the jury; (5) whether the trial court properly denied the motion in limine to require the State not to edit the defendant's exculpatory statements from the recordings of the undercover meetings; (6) whether the trial court erred in finding the cold, calculated, and premeditated aggravator; (7) whether the trial court properly denied the motion for judgment of acquittal regarding premeditated murder; (8) whether the trial court properly denied the motion for judgment of acquittal regarding arson; and (9) whether Florida's death penalty statute violates the Sixth Amendment right to a jury trial.

the course of attempted sexual battery aggravators, which was not harmless beyond a reasonable doubt, and therefore remanded for a new penalty phase. Id. at 1008.

On August 8, 2013, the trial court held a Koon[5] hearing, at which Kaczmar waived his right to present mitigation against his counsel's advice, including the presentation of any live mitigation witnesses or the testimony of the mitigation witnesses from the first penalty phase read into the record. During the second penalty phase proceeding, held on August 19-20, 2013, the prosecutor gave an opening statement in which he sought to prove two aggravating circumstances: (1) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment or placed on community control or felony probation; and (2) the capital felony was especially heinous, atrocious, or cruel (HAC). The prosecutor and the defense stipulated to the identity of the victim and Kaczmar's 2002 conviction for the prior violent felony of robbery. The State presented the live testimony of the medical examiner, Dr. Jesse Giles, and prior sworn testimony of nine additional witnesses.

The trial court conducted another waiver colloquy during the second penalty phase proceeding. Kaczmar again refused to present mitigation; however, he agreed to his counsel's reading to the jury a stipulation regarding his age at the

---

5. Koon v. Dugger, 619 So. 2d 246 (Fla. 1993).

time of the murder. The trial court noted that Kaczmar waived most mitigation but intended to present the stipulation and argue mitigation presented during the guilt phase. Thus, the defense counsel presented before the jury the stipulation that Kaczmar was twenty-four years old on the date of the murder. Thereafter, the defense rested, and the jury unanimously recommended the death sentence.

On August 20, 2013, the trial court conducted a Spencer hearing. The State did not present any additional evidence, and Kaczmar admitted into evidence the transcripts of testimony from six mitigating witnesses who testified during the first penalty phase proceeding, including the testimony of Dr. Mandoki. Both parties submitted to the trial court sentencing memoranda.

In its sentencing order, the trial court found two statutory aggravating circumstances: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; and (2) the capital felony was especially HAC. The trial court considered three statutory mitigating circumstances[6] and found that none had been proven, and therefore gave them no weight. The trial court also discussed twenty nonstatutory mitigating

_____

6. The statutory mitigating circumstances considered were: (1) the capital felony for which the defendant was to be sentenced was committed while he was under the influence of extreme mental or emotional disturbance; (2) the capacity of the defendant to appreciate the criminality of the conduct or to conform his conduct to the requirements of the law was substantially impaired; and (3) the defendant's age at the time of the crime.

circumstances[7] and gave fifteen of them slight weight. The trial court found that the aggravating circumstances far outweighed the mitigating circumstances in this case. In the sentencing order, the trial court noted that it was "required to give great weight to the jury's recommendation" and fully agreed with the "jury's assessment of the aggravating circumstances."

Kaczmar appealed the trial court's sentencing order to this Court raising six claims.[8]

---

7. The nonstatutory mitigating circumstances considered were: (1) the defendant was raised by an alcoholic father—slight weight; (2) the defendant was raised by a physically and emotionally abusive father—slight weight; (3) as a child, the defendant was emotionally traumatized when he witnessed his grandfather drown and his mother shoot his father—slight weight; (4) the defendant was taught to lie in court—slight weight; (5) the defendant lacked a normal mother-son bonding and relationship—slight weight; (6) the effect of the defendant's adult prison sentence while still a juvenile—no weight; (7) the defendant lacked adult male mentors during his crucial pre-teen and teenage years—no weight; (8) the defendant was emotionally torn by extremes of parental abuse and parental overindulgence—no weight; (9) the defendant is kind to animals—slight weight; (10) the defendant is a loyal friend—slight weight; (11) the defendant was a good, reliable business partner—slight weight; (12) the defendant is a good prison inmate—no weight; (13) the defendant has a loving relationship with his aunt—slight weight; (14) the defendant was protective of younger family members—slight weight; (15) the defendant suffers long term effects of illegal drug use—slight weight; (16) the defendant was impaired by illegal drugs on the evening of the murder—slight weight; (17) the defendant did not receive professional mental health counseling and treatment—slight weight; (18) the defendant was respectful in court—slight weight; (19) cosuspect Christopher Ryan Modlin received a disparate sentence—no weight; and (20) the defendant is a loving father—slight weight.

8. Kaczmar raised the following claims on direct appeal: (1) the trial court erred in assigning great weight to the jury's death sentence recommendation; (2)

- 6 -

**DISCUSSION**

Kaczmar first argues that his death sentence violates Hurst v. Florida, 136 S. Ct. 616 (2016). We agree but find the error harmless.

In Hurst v. Florida, the United States Supreme Court held that Florida's capital sentencing scheme is unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." 136 S. Ct. at 619. In Hurst v. State, 202 So. 3d 40, 54 (Fla. 2016), this Court held that "in addition to finding the existence of any aggravating factor unanimously, the jury must also unanimously find that the aggravating factors are sufficient for the imposition of death and unanimously find that the aggravating factors outweigh the mitigation before a sentence of death may be considered by the judge." Id. We further held that a unanimous jury recommendation is required before the trial court may impose a sentence of death. Id. We also concluded that a Hurst error is capable of harmless error review. Id. at 68.

---

the trial court improperly interfered with the jury's function by dismissing juror questions as "not relevant"; (3) the prosecutor engaged in impermissible closing argument; (4) the trial court erred in failing to find and give weight to the mitigating circumstance that Kaczmar was abused; (5) Kaczmar's death sentence is disproportionate; and (6) the death penalty was improperly imposed because Florida's death penalty statute is unconstitutional in light of Ring v. Arizona, 536 U.S. 584 (2002).

Kaczmar was sentenced to death under the procedure that the United States Supreme Court invalidated in Hurst v. Florida. "When the [United States] Supreme Court announces 'a new rule for the conduct of criminal prosecutions,' the rule must be applied to 'all cases, state or federal, pending on direct review or not yet final.'" State v. Fleming, 61 So. 3d 399, 403 (Fla. 2011) (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Because Kaczmar's case was pending on direct appeal when Hurst v. Florida issued, the United States Supreme Court's decision applies to him. See Davis v. State, 41 Fla. L. Weekly S528 (Fla. Nov. 10, 2016).

We must next address whether that error was harmless beyond a reasonable doubt. We conclude that the error was harmless. As this Court explained in Hurst:

> The harmless error test, as set forth in Chapman [v. California, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict, or alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

Hurst, 202 So. 3d at 68 (quoting State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986)). The Court further discussed the lens through which harmless error should be evaluated:

> Where the error concerns sentencing, the error is harmless only if there is no reasonable possibility that the error contributed to the sentence. See, e.g., Zack v. State, 753 So. 2d 9, 20 (Fla. 2000). Although the harmless error test applies to both constitutional errors and errors not based on constitutional grounds, "the harmless error

- 8 -

test is to be rigorously applied," DiGuilio, 491 So. 2d at 1137, and the State bears an extremely heavy burden in cases involving constitutional error. Therefore, in the context of a Hurst error, the burden is on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the jury's failure to unanimously find all the facts necessary for imposition of the death penalty did not contribute to Hurst's death sentence in this case. We reiterate,

> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact.

> DiGuilio, 491 So. 2d at 1139. "The question is whether there is a reasonable possibility that the error affected the [sentence]." Id.

Id. at 68. Regarding the right to a jury trial, it must be clear beyond a reasonable doubt that a rational jury would have unanimously found that there were sufficient aggravating factors and that the aggravating factors outweighed the mitigating circumstances.

In this case, we find the Hurst v. Florida violation to be harmless beyond a reasonable doubt. We recently decided a similar case, in which that defendant's jury, like Kaczmar's jury, unanimously recommended a death sentence. Davis, 41 Fla. L. Weekly at S528. In Davis, we held that the Hurst v. Florida error was harmless: "With regard to Davis's sentences, we emphasize the unanimous jury recommendations of death. These recommendations allow us to conclude beyond a reasonable doubt that a rational jury would have unanimously found that there

- 9 -

were sufficient aggravators to outweigh the mitigating factors." Id. at S539. Kaczmar's jury likewise recommended a death sentence by a unanimous twelve-to-zero vote. Kaczmar's jury received the same standard criminal jury instruction we cited in Davis, ensuring that the jury "determine[d] whether sufficient aggravators existed and whether the aggravation outweighed the mitigation before it . . . recommend[ed] a sentence of death." Id. (citing Fla. Std. Jury Instr. Crim. 7.11). As with the jury in Davis, Kaczmar's "jury was presented with evidence of mitigating circumstances and was properly informed that it may consider mitigating circumstances that are proven by the greater weight of the evidence." Id. (citing Fla. Std. Jury Instr. Crim. 7.11). As in Davis, Kaczmar's "jury was not informed that the finding that sufficient aggravating circumstances outweighed the mitigating circumstances must be unanimous, and even though it was instructed that it was not required to recommend death even if the aggravators outweighed the mitigators, the jury did in fact recommend death unanimously." Id. (citing Fla. Std. Jury Instr. Crim. 7.11). Given that Kaczmar's jury received the same critical instructions as Davis's jury, we are confident beyond a reasonable doubt that here, as in Davis, "the jury unanimously made the requisite factual findings to impose death before it issued the unanimous recommendations." Id. Finally, as in Davis, "the egregious facts of this case" provide "[f]urther support[] [for] our conclusion that any Hurst v. Florida error here was harmless." Id. at S540. Kaczmar stabbed

- 10 -

a woman approximately ninety-three times after she refused to have sex with him, burned down his own house to cover up the murder, and attempted to recruit an undercover police officer to frame his friend for the murder. See Kaczmar, 104 So. 3d at 996-97. The sentencing court found two aggravating factors: that Kaczmar had previously been convicted of a violent felony and that the murder was especially heinous, atrocious, or cruel (HAC). See § 921.141(5)(b), (h) (2009). "And this Court has indicated that the prior violent felony and HAC aggravators are 'two of the most weighty in Florida's sentencing calculus.' " Partin v. State, 82 So. 3d 31, 46 (Fla. 2011) (quoting Sireci v. Moore, 825 So. 2d 882, 887 (Fla. 2002)).

Accordingly, we hold that the Hurst v. Florida violation was harmless beyond a reasonable doubt. See Davis, 41 Fla. L. Weekly at S540. What we said in Davis is equally true in this case:

> Here, the jury unanimously found all of the necessary facts for the imposition of death sentences by virtue of its unanimous recommendations. In fact, although the jury was informed that it was not required to recommend death unanimously, and despite the mitigation presented, the jury still unanimously recommended that [the defendant] be sentenced to death . . . . The unanimous recommendations here are precisely what we determined in Hurst v. State to be constitutionally necessary to impose a sentence of death.

Id. As in Davis, the Hurst v. Florida violation in Kaczmar's case does not entitle him to a new penalty phase.

In his second claim, Kaczmar contends that the trial court violated this Court's holding in Muhammad v. State, 782 So. 2d 343 (Fla. 2001), and therefore the Eighth Amendment to the United States Constitution when the trial court gave great weight to the recommendation of Kaczmar's penalty phase jury despite the fact that no mitigating evidence was presented to the jury. We disagree.

In Muhammad, even though the defendant discharged his penalty phase counsel and did not present any mitigating evidence to the jury during the penalty phase, the trial court nevertheless instructed the penalty phase jury by stating that "[y]our advisory sentence as to what sentence should be imposed on this Defendant is entitled by Law and will be given great weight by this Court in determining what sentence to impose in this case." Id. at 361, 363 n.9. Afterward, the jury returned a recommended sentence of death. At the sentencing hearing, the trial court considered mitigating circumstances that were not presented to the jury, imposed a death sentence, and indicated in the sentencing order that "[t]his Court must give great weight to the jury's sentencing recommendation." Id. at 362. On direct appeal, this Court reversed for a new penalty phase and found that "the trial court erred when it gave great weight to the jury's recommendation in light of Muhammad's refusal to present mitigating evidence and the failure of the trial court to provide for an alternative means for the jury to be advised of available mitigating evidence." Id. at 361-62.

Here, the trial court considered Kaczmar's age at the time of the murder, a statutory mitigating circumstance, and found that it was not proven and thereby gave it no weight. Thereafter, the trial court concluded in its sentencing order as follows:

> This Court has carefully considered and weighed the aggravating and mitigating circumstances found in this case. Understanding that this is not an arithmetic comparison, but one which requires qualitative analysis, this Court has assigned an appropriate weight to each aggravating circumstance and each mitigating circumstance in this Order. On balance, the aggravating circumstances in this case far outweigh the mitigating circumstances. The jury was fully justified in its twelve to zero recommendation that the death penalty be imposed upon Defendant for Ms. Ruiz's murder. This Court is required to give great weight to the jury's recommendation and fully agrees with the jury's assessment of the aggravating circumstances presented. Defendant waived mitigation before the jury. The prior testimony of the former mitigation witnesses, however, was submitted to this Court. After considering the mitigating circumstances presented, this Court finds that the ultimate penalty that this Court can impose in this case should be imposed.

(Footnote omitted.)

The sentencing order here is similar to the one in Grim v. State, 841 So. 2d 455 (Fla. 2003). Even though Grim waived his right to present mitigation and the jury returned a recommendation of death, the Grim trial court stated in its sentencing order that it gave the jury's recommendation great weight. Id. We recognized that the Grim trial court's sentencing order was distinguishable from the sentencing order in Muhammad. Id. at 461. The Grim trial court acknowledged in its sentencing order, unlike the Muhammad trial court, that the

- 13 -

penalty phase jury did not have the benefit of hearing mitigation. As such, the Grim trial court independently weighed the aggravating and mitigating circumstances and duly considered the jury's recommendation. Id. We therefore found that Muhammad was distinguishable and concluded that the trial court in Grim properly sentenced Grim despite the lack of mitigation presented for the jury's consideration in the penalty phase. Id.

Similarly, the trial judge here stated in his sentencing order that he agreed "with the jury's assessment of the aggravating circumstances presented," acknowledged that Kaczmar "waived mitigation before the jury," "carefully considered and weighed the aggravating and mitigating circumstances," and thereafter concluded that death was the appropriate sentence after acknowledging that he stated that he was required to give great weight to the jury's recommendation. See Brooks v. State, 918 So. 2d 181, 210 (Fla. 2005) ("Indeed, the length, thoroughness, and tone of the sentencing order strongly imply that the trial judge's sentencing determination is based on the weighing of the aggravating and mitigating factors and on the jury's recommendation."), receded from on other grounds by, State v. Sturdivant, 94 So. 3d 434 (Fla. 2012). In addition, unlike Muhammad, the trial court did not instruct the jury that its sentencing recommendation would be given great weight. Muhammad, 782 So. 2d at 363, n.9. Nor did the trial court specifically warn Kaczmar during the Koon hearing

- 14 -

that he, as the sentencing judge, must give great weight to the jury's recommendation. Grim, 841 So. 2d at 461. Therefore, we likewise find this case distinguishable from Muhammad and conclude that the trial court properly sentenced Kaczmar notwithstanding the lack of mitigation presented for the jury's consideration. See Grim, 841 So. 2d at 461. Accordingly, we deny relief with regard to this claim.

In his third claim, Kaczmar argues that the trial judge improperly interfered with the jury's decision-making and usurped the jury's function when, in response to questions the jury posed during its deliberations, the judge stated to the jury "not relevant." We disagree.

Absent a contemporaneous objection, an appellate court reviews a trial court's improper comment for fundamental error. Bell v. State, 108 So. 3d 639, 650 (Fla. 2013). "Fundamental error is error that 'reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.' " Carr v. State, 156 So. 3d 1052, 1062-63 (Fla. 2015) (quoting Archer v. State, 934 So. 2d 1187, 1205 (Fla. 2006)).

Here, defense counsel failed to contemporaneously object to the trial court's response to the jury. As such, defense counsel failed to preserve this issue for appellate review. See Braddy v. State, 111 So. 3d 810, 855 (Fla. 2012) ("[T]o meet the objectives of any contemporaneous objection rule, an objection must be

sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal." (quoting Castor v. State, 365 So. 2d 701, 703 (Fla. 1978))). Furthermore, we find that there is no fundamental error—no error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. See Bell, 108 So. 3d at 650. Accordingly, Kaczmar is not entitled to relief concerning this claim.

With regard to his fourth claim, Kaczmar asserts that the trial court erred in failing to grant a mistrial when the prosecutor engaged in impermissible closing argument when he referred to the defense's mitigating evidence regarding the defendant's age as "excuses." We disagree.

"As a general rule, the failure to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review." Card v. State, 803 So. 2d 613, 622 (Fla. 2001). For those prosecutorial comments to which a defendant fails to contemporaneously object at trial but raises on appeal, we apply fundamental error review. Braddy, 111 So. 3d at 837) (citing Brooks v. State, 762 So. 2d 879, 899 (Fla. 2000)). Such a review includes two factors: (1) whether the improper statement was repeated; and (2) whether the jury was provided with an accurate statement of law after the improper comment was made. See Poole v. State, 151 So. 3d 402, 415 (Fla. 2014).

We have " 'long recognized that a prosecutor cannot improperly denigrate mitigation during a closing argument.' " Franqui v. State, 59 So. 3d 82, 98 (Fla. 2011) (quoting Williamson v. State, 994 So. 2d 1000, 1014 (Fla. 2008)); see Brooks, 762 So. 2d at 904.

Here, the prosecutor made the following comment during his closing argument:

> Mitigators.  I know the defense has indicated to you that they're going to argue some mitigators to you.  The only evidence they presented is [the defendant] was 24 at the time, just a few days shy of being 25 at the time.  That's the evidence they presented to you.
> Now they may make arguments and ask you to speculate about some other things, you know, create some excuses or mitigation as I would call them for his actions, but at the end of the day that's your call.  You determine whether those mitigators are present in the evidence I presented and you determine if they are present what weight to give them and at the end of the day you determine how they weigh out with the aggravators that have been presented in this case.

We conclude that the prosecutor's characterization of the mitigating evidence regarding Kaczmar's age at the time of the crime was improper.  See Oyola v. State, 158 So. 3d 504, 512 (Fla. 2015) (citing Delhall v. State, 95 So. 3d 134, 167-68 (Fla. 2012) ("Prosecutors who claim in closing statements that defendants' mitigating evidence are 'excuses,' 'make-believe,' 'flimsy,' or 'phantom' have been rebuked by this Court.")).  However, the comment does not rise to the level of fundamental error.

Here, the prosecutor called the mitigating evidence—the stipulation of the defendant's age at the time of the crime—"excuses" only once, and after making the statement, the prosecutor encouraged the jury to weigh the aggravators and the mitigators in order to recommend an advisory sentence. Also, the trial court read the standard jury instructions, which included an accurate statement of the law with regard to mitigation. See Poole, 151 So. 3d at 415. We therefore find that the prosecutor's statement here did not rise to the level of fundamental error. See Mendoza v. State, 964 So. 2d 121, 133 (Fla. 2007). Accordingly, Kaczmar is not entitled to relief with regard to this claim.

In his fifth claim, Kaczmar contends that the trial court erred in failing to find the nonstatutory mitigating circumstance that he was emotionally torn by extremes of parental abuse and parental overindulgence. Specifically, Kaczmar argues that the trial court erred in failing to find this mitigator on the ground that Dr. Miguel Mandoki's testimony, which was transcribed and submitted to the trial court only during the second Spencer hearing, linked Kaczmar's inability to know right from wrong to the crimes even though there is no requirement that mitigation have a nexus to the offenses. We agree but conclude that the error is harmless.

We require a trial court to enter a written sentencing order that "expressly evaluat[es]" the defendant's proposed mitigation. Campbell v. State, 571 So. 2d

- 18 -

415, 419 (Fla. 1990), <u>receded from on other grounds by</u>, <u>Trease v. State</u>, 768 So.

2d 1050, 1055 (Fla. 2000).  Since <u>Campbell</u> was decided, we have held:

> Where it is clear that the trial court has considered all evidence presented in support of a mitigating factor, the court's decision as to whether that circumstance is established will be reviewed only for abuse of discretion. . . .  The weight assigned to an established mitigating circumstance is also reviewed for abuse of discretion.
>
> When a trial court fails to detail its findings, however, this Court is "deprive[d] . . . of the opportunity for meaningful review."  In such circumstances, this Court has vacated the defendant's death sentence and remanded to the trial court with instructions to issue a new sentencing order.  However, a trial court's findings on mitigation are also subject to review for harmless error, and this Court will not overturn a capital appellant's sentence if it determines that an error was harmless beyond a reasonable doubt.

<u>Ault v. State</u>, 53 So. 3d 175, 186-87 (Fla. 2010) (citations omitted).

In its sentencing order, the trial court here made the following finding with

regard to mitigating evidence that it considered:

> Tammy Evans, Martha Moody and Katherine Casleton testified that Defendant's father would alternate between beating Defendant and overindulging him.  Defendant, however, failed to present evidence of how this upbringing impacted his ability to know right from wrong or inhibited his ability to be a law-abiding member of society.  This Court finds this mitigating circumstance was not proven and gives it no weight in determining the appropriate sentence for Defendant.

In its finding, the trial court specifically stated that the defendant "failed to present

evidence of how this upbringing impacted his ability to know right from wrong or

inhibited his ability to be a law-abiding member of society."  However, the record

indicated that Dr. Miguel Mandoki, the defense's expert witness, testified to such evidence during the original penalty phase proceeding.

We find that the trial court failed to expressly evaluate Dr. Mandoki's testimony regarding Kaczmar's emotional state of being torn by extremes of parental abuse and parental overindulgence when it made no reference in the sentencing order to Dr. Mandoki's testimony. See Deparvine v. State, 995 So. 2d 351, 380 (Fla. 2008). The trial court had prior notice that Dr. Mandoki's testimony was going to be offered as mitigating evidence because defense counsel filed a sentencing memorandum during the first Spencer hearing that described Dr. Mandoki's explanation of "how such parental erratic behavior deprives a child of the normal, positive and negative reinforcements needed to learn and grow into a mature and responsible adult." Even though defense counsel incorporated that sentencing memorandum as its sentencing memorandum for the second Spencer hearing, the trial court failed to mention in its sentencing order Dr. Mandoki's professional opinion regarding Kaczmar's emotional state or his inability to know right from wrong due to the extremes of being physically beaten and overindulged as a child. See id.

Furthermore, the only mitigating evidence that the trial court here considered in its sentencing order concerning the mitigator was the testimony of Tammy Evans, Martha Moody, and Katherine Casleton. None of these witnesses testified

about how the abuse and overindulgence affected Kaczmar emotionally. A "sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature." Harris v. State, 843 So. 2d 856, 869 (Fla. 2003) (quoting Campbell, 571 So. 2d at 419)). Because the trial court failed to address Dr. Mandoki's testimony in the sentencing order with regard to this particular nonstatutory mitigator, we find that the trial court erred in not giving it more express consideration "pursuant to this Court's mandate to expressly evaluate each mitigating circumstance." Deparvine, 995 So. 2d at 381. We therefore conclude that the trial court abused its discretion when it found that the mitigator was unproven. See Merck v. State, 763 So. 2d 295, 297-99 (Fla. 2000); Reese v. State, 694 So. 2d 678, 684 (Fla. 1997).

However, the trial court's error in not treating Dr. Mandoki's testimony in greater detail in its sentencing order is harmless. See Thomas v. State, 693 So. 2d 951, 953 (Fla. 1997). In this context, we set the following parameters for evaluating harmless error:

> The question is whether there is a reasonable possibility that the error contributed to the sentence. See State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986). Reversal is permitted only if the excluded mitigating factors reasonably could have resulted in a lesser sentence. If there is no likelihood of a different sentence, then the error must be

deemed harmless. See Rogers v. State, 511 So. 2d 526, 535 (Fla. 1987).

Ault, 53 So. 3d at 195.

Here, the trial court found two aggravating circumstances—HAC and prior violent felony, which we have said are among the weightiest of aggravators, and gave both of them "great weight." See Miller v. State, 161 So. 3d 354, 374 (Fla. 2015); Matthews v. State, 124 So. 3d 811, 818 (Fla. 2013). The trial court found that none of the statutory mitigating circumstances were proven and thereby gave them no weight. Out of the remaining nineteen nonstatutory mitigators, the trial court found that fifteen were established and gave them slight weight, and the remaining four were not proven and thereby given no weight.

Even if the trial court found that the nonstatutory mitigator regarding Kaczmar's emotional state of being torn between parental abuse and overindulgence was established and given greater weight than any other mitigator it found, there is no reasonable doubt that had the trial court noted in its sentencing order Dr. Mandoki's testimony, the court still would have imposed the death penalty due to the extensive aggravating circumstances in this case. See Ault, 53 So. 3d at 195-96; Singleton v. State, 783 So. 2d 970, 977 (Fla. 2001). Accordingly, Kaczmar is not entitled to relief concerning this claim.

With regard to his sixth claim, Kaczmar argues that his death sentence is disproportionate. We disagree and find that Kaczmar's death sentence is proportionate.

We must conduct a comprehensive review of each death sentence to determine if the murder falls within the category of both the most aggravated and the least mitigated murders in order to ensure uniformity in the application of the death sentence. See Anderson v. State, 841 So. 2d 390, 408 (Fla. 2003). "We consider the totality of the circumstances of the case and compare the case to other capital cases." Williams v. State, 37 So. 3d 187, 205 (Fla. 2010) (citing Offord v. State, 959 So. 2d 187, 191 (Fla. 2007)). This analysis does not involve a quantitative comparison between the number of aggravating and mitigating factors; it requires a qualitative review of the underlying basis for each aggravating factor and mitigating factor. Id. Additionally, the prior violent felony aggravator and HAC are qualitatively among the weightiest aggravating circumstances. See Kocaker v. State, 119 So. 3d 1214, 1232 (Fla. 2013); Hodges v. State, 55 So. 3d 515, 542 (Fla. 2010).

Under the totality of the circumstances, Kaczmar's sentence is proportionate in relation to other death sentences that we have upheld. See, e.g., Gosciminski v. State, 132 So. 3d 678 (Fla. 2013), cert. denied, 135 S. Ct. 57 (2014) (death sentence was proportionate where the victim was stabbed and bludgeoned to death;

the trial court found three statutory aggravators, including HAC, few nonstatutory mitigators, and no statutory mitigators); Pham v. State, 70 So. 3d 485 (Fla. 2011) (death sentence was proportionate in a stabbing murder where the jury recommended death by a vote of ten to two, and the trial court found several aggravators, including the prior violent felony aggravator and HAC, statutory mitigation, and little nonstatutory mitigation); Banks v. State, 46 So. 3d 989 (Fla. 2010) (death sentence proportionate in a stabbing murder where the jury recommended death by a ten-to-two vote, and the trial court found three aggravators: prior violent felony, HAC, and CCP; and five mitigating circumstances: low IQ, brain deficit, antisocial personality traits, not the only participant, and difficult youth); Merck v. State, 975 So. 2d 1054 (Fla. 2007) (death sentence proportionate for stabbing murder where trial court found prior violent felony and HAC aggravators, statutory age mitigator, and several nonstatutory mitigators, including a difficult family background, alcohol use the night of the murder, and a capacity to form positive relationships); Reynolds v. State, 934 So. 2d 1128 (Fla. 2006) (death sentence was proportionate where one the victims was stabbed multiple times and beaten; and the prior violent felony aggravator, HAC, two additional aggravators, and no statutory mitigators were found); Singleton, 783 So. 2d 970 (death sentence proportionate for stabbing murder where trial court found prior violent felony and HAC aggravators as well

as substantial mitigation, including extreme mental or emotional disturbance, impaired capacity to appreciate criminality of conduct or to conform conduct to requirements of law, and that defendant was under influence of alcohol and possibly medication at time of offense).

Here, the jury unanimously recommended the death penalty. The trial court considered the following statutory aggravating factors and gave both great weight: (1) Kaczmar was previously convicted of another felony involving the use or threat of violence to the person; and (2) Kaczmar committed the murder in an especially heinous, atrocious, or cruel fashion. In mitigation, the trial court found no statutory mitigating circumstances had been established; however, it considered twenty nonstatutory mitigating circumstances, gave fifteen of them slight weight, and the remaining five no weight. We find that this case meets the criteria of being aggravated with little mitigation. Thus, the death sentence is proportionate. Accordingly, Kaczmar is not entitled to relief with regard to this claim.

## CONCLUSION

Based on the foregoing analysis, we affirm Kaczmar's sentence of death.

It is so ordered.

LABARGA, C.J., and LEWIS, J., concur.
CANADY and POLSTON, JJ., concur in result.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which
QUINCE, J., concurs.
PERRY, Senior Justice, dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring in part and dissenting in part.

I concur in part and dissent in part because, although I would affirm the conviction, I do not find the Hurst error to be harmless beyond a reasonable doubt. Hurst v. State, 202 So. 3d 40 (Fla. 2016). Therefore, I would reverse for a new penalty phase. Id. Even though the jury unanimously recommended death in Kaczmar's case, the jury did not hear mitigation other than the defendant's stipulated age of 24. Instead, the mitigation was presented to the trial judge outside the presence of the jury. In fact, the trial court acknowledged that the jury did not have the benefit of the mitigation evidence that was presented to the judge alone, which included transcripts of six mitigation witnesses who testified during Kaczmar's first penalty phase proceeding.

In Kaczmar's first penalty phase, which we reversed for other reasons, the jury heard testimony regarding four aggravating factors coupled with mitigating circumstances. Specifically, during Kaczmar's first penalty phase, the jury was presented with the following mitigation:

> The defense presented testimony from Kaczmar's family and friends depicting Kaczmar as a good person and respected business partner who had a troubled upbringing due to his father's abuse. Dr. Miguel, a child psychiatrist, testified on behalf of the defense that Kaczmar was traumatized as a child by his father's alcoholism and his own chronic drug abuse. Dr. Miguel also testified that although he believed Kaczmar to be competent during trial, he did not think

- 26 -

Kaczmar knew what he was doing on the night of the murder and did not know right from wrong.

Kaczmar v. State, 104 So. 3d 990, 997 (Fla. 2012). After considering all the evidence, the first jury did not unanimously recommend that death was the appropriate sentence. Id.

Our opinion in Hurst clearly changed the dynamics between the judge and jury in Florida capital sentencing. Pertinent to this case, this Court's decision in Hurst changed the calculus for waiving the presentation of some or all of the mitigating evidence to a jury. Moreover, Kaczmar did not waive a penalty phase jury altogether, as some other defendants have who were not afforded Hurst relief. See Mullens v. State, 197 So. 3d 16 (Fla. 2016) (finding that Hurst is not applicable to defendants who waived the right to a penalty phase jury), cert. denied, No. 16-6773 (U.S. Jan. 9, 2017).

This case in particular is distinguishable from other cases where this Court found the Hurst error harmless beyond a reasonable doubt based on a unanimous recommendation of death from the jury because the jury heard only a small portion of the mitigating evidence. See Davis v. State, 41 Fla. L. Weekly S528 (Fla. Nov. 10, 2016). Under Hurst, this Court cannot substitute its judgment for that of the jury and, therefore, cannot determine what weight the additional mitigation would have been assigned if it had been presented to the penalty phase jury. Nor can we speculate on the effect that the additional mitigation, if presented to the jury, would

- 27 -

have had on the jury's recommendation in Kaczmar's penalty phase. We do know, however, that the jury for Kaczmar's first penalty phase heard the exact same mitigating evidence that was presented only to the judge during Kaczmar's second penalty phase and did not unanimously recommend death. In Hurst, we emphasized the importance of unanimity in jury decisions, stating: "If death is to be imposed, unanimous jury sentencing recommendations, when made in conjunction with the other critical findings unanimously found by the jury, provide the highest degree of reliability in meeting these constitutional requirements in the capital sentencing process." 202 So. 3d at 60. Therefore, I would grant Kaczmar relief under Hurst in this case.

I also believe that it was error for the trial judge to give great weight to the jury recommendation, which was bereft of any meaningful presentation of mitigation. See Muhammad v. State, 782 So. 2d 343, 361-62 (Fla. 2001). In my view, there is a critical distinction between this case and Boyd v. State, 910 So. 2d 167 (Fla. 2005), and McCray v. State, 71 So. 3d 848 (Fla. 2011), where we concluded that the trial court did not err in giving the jury's recommendation great weight because the procedural safeguards of Muhammad were inapplicable because the defense at least presented some mitigation. Kaczmar's stipulation of his age at the time of the crime is not equivalent to the limited mitigation presented by Boyd, 910 So. 2d at 188-89, or McCray, 71 So. 3d at 879-80. Neither in Boyd,

910 So. 2d at 188, nor in McCray, 71 So. 3d at 879-80, did the defendant completely waive the right to present mitigation as Kaczmar did. Accordingly, the procedural safeguards announced by this Court in Muhammad apply to this case and this case should also be remanded on that basis for a new penalty phase.

For all these reasons I would affirm the conviction but remand for a new penalty phase.

QUINCE, J., concurs.

PERRY, Senior Justice, dissenting.

I cannot agree with the majority's finding that the Hurst v. Florida, 136 S. Ct. 616 (2016), error was harmless beyond a reasonable doubt simply because the jury recommendation for death was unanimous and the sentencing judge found weighty aggravating circumstances. See majority op. at 12. To the extent that I would not find the error harmless, I dissent.

In Hurst v. State, 202 So. 3d 40, 69 (Fla. 2016), we declined to speculate why the jurors voted the way they did; yet, because here the jury vote was unanimous, the majority is comfortable substituting its weighing of the evidence to determine which aggravators each of the jurors found. Even though the jury unanimously recommended the death penalty, whether the jury unanimously found either aggravating factors remains unknown.

In Hurst, we held that for a defendant to be eligible for a death sentence, a jury must unanimously find the existence of each aggravating factor, that the aggravating factors are sufficient, and that the aggravating factors outweigh the mitigating circumstances. Id. at 53. Additionally, we held that the jury's death sentence recommendation must be unanimous. Id. While I agreed in Hurst that Hurst v. Florida, 136 S. Ct. 616 (2016), errors are subject to harmless error review, see Hurst, 202 So. 3d at 40, I believe the majority's conclusion that the error was harmless beyond a reasonable doubt in this case is mistaken.

The jury was presented with evidence to support and instructed on two aggravating circumstances: (1) that Kaczmar was previously convicted of robbery, a violent felony; and (2) that the capital felony was especially heinous, atrocious, or cruel (HAC). The prior violent felony was established by a stipulation between Kaczmar and the State, while the primary evidence supporting the HAC aggravator was the number and nature of the multiple stab wounds found in the victim's body. The HAC aggravating circumstance required factual findings that under Hurst must now be considered and weighed by a jury. The majority concludes that the error is harmless because no reasonable jury would have failed to find the aggravating factors given the evidence. However, we simply cannot assume that every juror found HAC beyond a reasonable doubt, much less that every juror agreed that either HAC or prior violent felony alone, or both aggravating factors

- 30 -

together, were sufficient to impose a death sentence. This is especially true here, where the State introduced no evidence concerning the details of Kaczmar's prior conviction for robbery.

The majority's reweighing of the evidence to support its conclusion is not an appropriate harmless error review. The harmless error review is not a sufficiency of the evidence test, and the majority's analysis should instead focus on the effect of the error on the trier of fact. State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986). By concluding that both aggravators were unanimously found by the jury, the majority is engaging in the exact type of conduct the United States Supreme Court cautioned against in Hurst v. Florida. See Hurst v. Florida, 136 S. Ct. at 622.

Because the harmless error review is neither a sufficiency of the evidence review "nor a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence," see State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986), I cannot conclude beyond a reasonable doubt that the error here was harmless.

An Appeal from the Circuit Court in and for Clay County,
    William Arthur Wilkes, Judge - Case No. 102009CF000233000AMX

Clinton Andrew Thomas, Public Defender, and Nada Margaret Carey, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, and Charmaine Millsaps, Assistant Attorney General, Tallahassee, Florida,

for Appellee