PARIENTE, J., dissenting.
The majority relies on the jury's unanimous recommendation for death to determine that the Hurst[2] error is harmless beyond a reasonable doubt. However, for the same reasons set forth in my concurring in part, dissenting in part opinion in Kaczmar v. State , 228 So.3d 1 (Fla. 2017), petition for cert. filed , No. 17-8148 (U.S. Mar. 14, 2018), I would reverse for a new penalty phase because the jury was not presented with any evidence of the significant *149 mitigation in Grim's case, which the trial judge subsequently heard, before making its recommendation. Due to the jury's critical role in capital sentencing after Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), and Hurst , unless the defendant waives his right to a penalty phase jury, available mitigation must be presented to the jury.
FACTS
After being convicted of first-degree murder and sexual battery upon a person twelve years of age or older with the use of a deadly weapon, Grim "insisted on not presenting any mitigation" to the jury during the penalty phase. Grim v. State (Grim I ), 841 So.2d 455, 459 (Fla. 2003). Grim explained to the trial judge at the Koon[3] hearing that he would rather receive the death penalty than spend the rest of his life in prison. After a penalty phase, in which the jury did not hear any evidence of mitigation, the jury unanimously recommended that Grim be sentenced to death. Id.
Despite the absence of mitigating evidence, pursuant to this Court's opinion in Muhammad v. State , 782 So.2d 343 (Fla. 2001), the trial court was obligated to determine the existence of mitigation anywhere in the record and had the discretion to appoint special counsel to present mitigation. Id. at 364-65. Accordingly, the trial court appointed special counsel to present available mitigating evidence at the Spencer[4] hearing.
After the Spencer hearing, the trial court found three aggravating factors, three statutory mitigating circumstances, and five nonstatutory mitigating circumstances. Grim I , 841 So.2d at 460. The three statutory mitigating circumstances were: (1) disruptive home life and child abuse; (2) hard-working employee; and (3) mental health problems that did not reach the level of section 921.141(6)(b), Florida Statutes (1997). Id. The nonstatutory mitigating circumstances were: "(1) lack of long-term psychiatric care"; (2) "marital problems and situational stresses"; (3) "errors of judgment under stress"; (4) "model prison inmate"; and (5) "entered prison at a young age." Id.
As to statutory mental mitigation, the trial court's sentencing order explained that the evidence presented by special counsel-which included the deposition testimony of psychologist Dr. James Larson and a 1983 psychiatric evaluation by Dr. B. R. Ogburn-established the following: (1) Grim "suffers from an impulse-control disorder known as 'intermittent explosive disorder ' along with a depressive disorder"; (2) a diagnosis of "antisocial personality disorder"; (3) a diagnosis of "having a '[p]ersonality disorder, mixed type with avoidant, antisocial and passive-aggressive features' "; and (4) at the time of the murder, Grim "was taking two medications, Prozac and Depakote, which were targeted for the intermittent explosive disorder," however the impact of the medications was not established.[5]
As to other statutory mitigating circumstances, the trial court determined that Grim (1) "had a disruptive home life," which "certainly had an impact upon him," (2) had a "shining" employment background since returning to Northwest Florida *150 on parole from Texas; (3) had "a history of alcohol usage," which included being "discharged from the military for substance related charges," and (4) "suffers from significant, long-term mental problems." This Court's case law makes clear "the importance and significance of this kind of mitigation evidence." Williams v. State , 987 So.2d 1, 14 (Fla. 2008).
As to nonstatutory mitigating circumstances, the trial court determined that Grim (1) received psychiatric care in 1983; (2) "was in the throes of a divorce at the time of this murder" and "had even sought legal advice from his victim"; (3) makes " 'appalling errors of judgment' when under stress"; (4) had "been a model inmate ... for over two years while awaiting trial"; and (5) "was first confined for a short time while in the Navy" at twenty-two years old. After weighing the aggravation and mitigation and "duly consider[ing] the jury recommendation," the trial court sentenced Grim to death.
On direct appeal, consistent with Muhammad , this Court denied Grim's claim that the trial court should have required special counsel to present mitigation evidence to the penalty phase jury, stating: "We ... continue to hold that a trial court should not be required to appoint special counsel for purposes of presenting mitigating evidence to a penalty phase jury if the defendant has knowingly and voluntarily waived the presentation of such evidence." Grim I , 841 So.2d at 461. In my specially concurring opinion, I wrote that "I would adopt a uniform procedure requiring the appointment of special counsel to present available mitigation." Id. at 465 (Pariente, J., specially concurring). This kind of procedure has yet to be adopted.
ANALYSIS
In 1978, in Goode v. State , 365 So.2d 381 (Fla. 1978), this Court stated:
[E]ven though [the defendant] expressed a desire to be executed, this Court must, nevertheless, examine the record to be sure that the imposition of the death sentence complies with all of the standards set by the Constitution, the Legislature and the courts.
Id. at 384. Subsequently, the Court set forth various procedures for doing so but, as explained above, left any presentation of mitigating evidence beyond the presentence investigation report to the trial court's discretion. Muhammad , 782 So.2d at 364.
Concurring specially in Muhammad , I set forth a proposed procedure for trial courts appointing special counsel to present mitigation to the jury when a defendant waives the same:
Because of the tremendous responsibilities placed on the trial court and this Court in death penalty cases, rather than leave the appointment of counsel to the trial court's discretion on a case-by-case basis, I would thus adopt a prospective rule that would provide for the appointment of special counsel to present available mitigation for the benefit of the jury , the trial court and this Court in order to assist the judiciary in performing our statutory and constitutional obligations.
Id. at 370 (Pariente, J., specially concurring) (emphasis added).
In 2017, on remand from the United States Supreme Court's decision in Hurst v. Florida , this Court made clear in Hurst that the death penalty "must be reserved only for defendants convicted of the most aggravated and least mitigated of murders," as determined by a jury. 202 So.3d at 60 (emphasis added). Therefore, " Hurst changed the calculus for waiving the presentation of some or all of the mitigating evidence to a jury."
*151 Kaczmar , 228 So.3d at 16 (Pariente, J., concurring in part and dissenting in part). Thus, in light of Hurst v. Florida and Hurst , which "clearly changed the dynamics between the judge and the jury in Florida capital sentencing," id. , this Court should adopt a "prospective rule that would provide for the appointment of special counsel to present available mitigation for the benefit of the jury," whose role we now know is critical to the constitutional imposition of the death penalty. Muhammad , 782 So.2d at 370 (Pariente, J., specially concurring).
Regardless of whether this Court alters the requirements of Muhammad , it is clear that trial courts and litigants have an independent obligation to ensure that the jury, as sentencer, receives all the necessary information to make the constitutionally required findings of fact before recommending a sentence of death. See Hurst , 202 So.3d at 44. Those findings, of course, include finding unanimously the existence of each aggravating factor, the sufficiency of the aggravators to impose death, that the aggravation outweighs the mitigation, and, finally, a unanimous vote that death is the appropriate sentence. See id.
Aside from addressing this issue prospectively, the question arises how a defendant waiving mitigation affects whether a Hurst error is harmless beyond a reasonable doubt. As I explained in Muhammad , "[a]lthough the defendant may have a right to plead guilty, the defendant has no corresponding 'right' after conviction to have the death penalty imposed based on a waiver of the right to present mitigation." 782 So.2d at 369 (Pariente, J., specially concurring). Further, "it is not necessarily those most deserving of the death penalty ... who seek its imposition and refuse to present mitigation. Rather, in some cases, those seeking the death penalty, while competent, may suffer from serious underlying mental illnesses." Id. In fact, whether a defendant suffers from such mental illness is exactly the type of mitigation that would be appropriately presented by special counsel, as the trial court's sentencing order in this case reflects.
As the United States Supreme Court stated in Porter v. McCollum , 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), "the Constitution requires that 'the sentencer in capital cases must be permitted to consider any relevant mitigating factor.' " Id. at 42, 130 S.Ct. 447 (quoting Eddings v. Oklahoma , 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ). Likewise, it is clear that a jury not apprised of mitigating evidence cannot properly make all of the requisite findings of fact required to constitutionally impose death-namely, that the aggravation outweighs the mitigation and, further, that death is an appropriate sentence. See Hurst , 202 So.3d at 40-42. In Hurst , this Court stated that "[i]f death is to be imposed, unanimous jury sentencing recommendations, when made in conjunction with the other critical findings unanimously found by the jury, provide the highest degree of reliability in meeting these constitutional requirements in the capital sentencing process." Id. at 60. Therefore, the Hurst error cannot be harmless beyond a reasonable doubt in a case where mitigating evidence existed but was not presented to the penalty phase jury. See Kaczmar , 228 So.3d at 16-17 (Pariente, J., concurring in part and dissenting in part).
THIS CASE
Hurst applies retroactively to Grim's sentence of death, which became final in 2003. See Mosley v. State , 209 So.3d 1248, 1283 (Fla. 2016). Although the trial court appointed special counsel to present mitigation at the Spencer hearing and recognized in its sentencing order that the penalty phase jury did not have the benefit of *152 hearing mitigation, I cannot conclude, in light of Hurst , that the lack of mitigation was remedied. The jury in Grim's case was left with no choice but to recommend death because they did not hear any evidence of mitigation. Thus, the jury's unanimous recommendation for death in Grim's case is unreliable and cannot support the conclusion that the Hurst error is harmless beyond a reasonable doubt.
CONCLUSION
For the reasons fully explained above, I cannot conclude that the Hurst error was harmless beyond a reasonable doubt and would, therefore, reverse and remand for a new penalty phase.
Accordingly, I dissent.
QUINCE, J., concurs.

Hurst v. State (Hurst ), 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017).

Koon v. Dugger , 619 So.2d 246 (Fla. 1993).

Spencer v. State , 615 So.2d 688 (Fla. 1993).

The sentencing order stated that although "Dr. Larson was comfortable in saying the murder did not occur while the Defendant was 'experiencing psychosis in the sense of responding to delusions or hallucinations,' ... Dr. Larson could not rule out some kind of drug interaction with the Defendant's disorders."