# Supreme Court of Florida

_____

No. SC17-1475
_____

**WILLIE SETH CRAIN, JR.,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[April 5, 2018]

PER CURIAM.

Willie Seth Crain, Jr., appeals the postconviction court's denial of his successive motion for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Crain's motion sought relief based on the United States Supreme Court's decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016), and this Court's opinions in *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017), and *Perry v. State*, 210 So. 3d 630 (Fla. 2016). For the reasons fully explained below, we affirm the postconviction court's denial of relief.

# BACKGROUND

In 1999, a jury convicted Crain of first-degree murder and kidnapping with intent to commit or facilitate the commission of a homicide. *Crain v. State*, 894 So. 2d 59, 62 (Fla. 2004), *cert. denied*, 546 U.S. 829 (2005). On direct appeal, this Court explained the facts underlying Crain's crimes:

> Willie Seth Crain, a then fifty-two-year-old Hillsborough County fisherman and crabber, was charged with the September 1998 kidnapping and first-degree murder of seven-year-old Amanda Brown. At the time, Amanda was three feet, ten inches tall and weighed approximately forty-five pounds.
> . . . .
> [On the night of the crimes,] Crain mentioned that he had a large videotape collection and invited [the victim's mother,] Hartman and Amanda to his trailer to watch a movie. Amanda asked if he had "Titanic," which she stated was her favorite movie. Crain stated that he did have "Titanic" and Amanda pleaded with her mother to allow them to watch the movie. Hartman was initially reluctant because it was a school night, but she finally agreed. Crain drove Hartman and Amanda approximately one mile to his trailer in his white pickup truck.
> . . . .
> At [one] point in the evening, Hartman asked Crain if he had any medication for pain. Crain offered her Elavil and Valium. . . . Hartman elected to take five, five-milligram Valium tablets. Crain took one Valium tablet.
> Eventually, Hartman decided that it was time to leave. Crain drove Hartman and Amanda back to their residence and accompanied them inside. . . .
> According to Hartman, she told Crain, who appeared to be intoxicated at that time, that he could lie down and sober up but she was going to bed. The time was approximately 2:30 a.m. Within five minutes of Hartman going to bed, Crain entered Hartman's bedroom and lay down on the bed with Hartman and Amanda. Hartman testified that she neither invited Crain to lie in her bed nor asked him

to leave.  Crain was fully clothed and Amanda was wearing a nightgown.  Amanda was lying between Hartman and Crain.

Penny Probst, a neighbor of Hartman, testified that at approximately 12 midnight on September 10-11, 1998, she saw a white truck parked immediately behind Hartman's car in Hartman's driveway.  In the early morning hours of September 11, Probst observed the truck parked at the side of Hartman's residence with lights on and the engine running.  Probst heard the truck leave after about five minutes.

Hartman slept soundly through the night.  When she woke in her bed alone the next morning, she discovered that Amanda was missing.  Hartman testified her alarm clock read 6:12 a.m. when she awoke.  Hartman immediately called Crain on his cell phone.  At that time, he was at the Courtney Campbell boat ramp in Hillsborough County loading his boat.  He told Hartman he did not know where Amanda was.  Hartman then called the police and reported Amanda's disappearance.

*Id.* at 62-64 (footnotes omitted).

Following the jury's unanimous recommendation for death, the trial court sentenced Crain to death, finding three aggravating factors and assigning each the noted weight: "(1) prior violent felonies (great weight), (2) the murder was committed during the course of a kidnapping (great weight), and (3) the victim was under the age of twelve (great weight)." *Id.* at 67.  The trial court "found no statutory mitigators and eight nonstatutory" mitigating circumstances. *Id.*

On direct appeal in 2004, this Court affirmed Crain's first-degree murder conviction, finding sufficient evidence "to establish first-degree felony murder based on kidnapping with the intent to inflict bodily harm." *Id.* at 73.  As to Crain's kidnapping conviction, this Court concluded that "competent, substantial

evidence [did] not exist to support the jury verdict of kidnapping with intent to commit homicide." *Id.* at 76. Therefore, this Court "reverse[d] the judgment of guilt of kidnapping and direct[ed] the trial court on remand to enter judgment for false imprisonment, and to resentence Crain accordingly." *Id.* Crain's sentence of death became final in 2005.

In 2011, this Court explained its holding on direct appeal with respect to Crain's kidnapping conviction:

> In contrast to the jury instruction on count I, which related to the murder charge and instructed the jury on alternative theories of kidnapping, on count II, the jury was not instructed on the unpled alternative of kidnapping with intent to inflict body [sic] harm. Thus, on appeal, when examining whether the evidence was legally sufficient to support a separate conviction for kidnapping as charged in count II of the indictment, this Court concluded that competent, substantial evidence did not exist to support the jury verdict of kidnapping *with the intent to commit homicide*. As to count I, however, we held that there was sufficient evidence to support a felony murder conviction under the alternative theory of kidnapping *with the intent to inflict bodily harm*.

*Crain v. State*, 78 So. 3d 1025, 1032 n.3 (Fla. 2011) (citations omitted).

## ANALYSIS

In this case, Crain argues that, despite this Court consistently holding that *Hurst* errors are harmless in cases where the jury unanimously recommended death, his case is different because: (1) the kidnapping aggravating factor was invalidated; (2) there was no finding that the murder was heinous, atrocious, or cruel (HAC) or cold, calculated, and premeditated (CCP); (3) the jury was given

- 4 -

inaccurate instructions regarding its sentencing responsibility;[1] and (4) the jury was not instructed on mercy. As we explain below, we reject Crain's arguments and conclude that the *Hurst* error in Crain's case was harmless beyond a reasonable doubt.

On remand from the United States Supreme Court in *Hurst v. Florida*, this Court held in *Hurst*:

> [A]ll the critical findings necessary before the trial court may consider imposing a sentence of death must be found unanimously by the jury. We reach this holding based on the mandate of *Hurst v. Florida* and on Florida's constitutional right to jury trial, considered in conjunction with our precedent concerning the requirement of jury unanimity as to the elements of a criminal offense. In capital cases in Florida, these specific findings required to be made by the jury include the existence of each aggravating factor that has been proven beyond a reasonable doubt, then finding that the aggravating factors are sufficient, and the finding that the aggravating factors outweigh the mitigating circumstances. We also hold, based on Florida's requirement for unanimity in jury verdicts, and under the Eighth Amendment to the United States Constitution, that in order for the trial court to impose a sentence of death, the jury's recommended sentence of death must be unanimous.

202 So. 3d at 44. *Hurst* applies retroactively to Crain's sentence of death, which became final in 2005. *See Mosley v. State*, 209 So. 3d 1248, 1283 (Fla. 2016).

This Court also determined that *Hurst* errors are subject to harmless error review. 202 So. 3d at 67. In *Davis v. State*, 207 So. 3d 142 (Fla. 2016), this Court explained that "it must be clear beyond a reasonable doubt that a rational jury

---

1. *See Caldwell v. Mississippi*, 472 U.S. 320 (1985).

would have unanimously found that there were sufficient aggravating factors that outweighed the mitigating circumstances." *Id.* at 174. In *Davis*, emphasizing the jury's unanimous recommendation for death, this Court concluded that the *Hurst* error was harmless beyond a reasonable doubt, explaining:

> Even though the jury was not informed that the finding that sufficient aggravating circumstances outweighed the mitigating circumstances must be unanimous, and even though it was instructed that it was not required to recommend death even if the aggravators outweighed the mitigators, the jury did, in fact, unanimously recommend death. From these instructions, we can conclude that the jury unanimously made the requisite factual findings to impose death before it issued the unanimous recommendations.

*Id.* at 174-75 (citation omitted). Since *Davis*, this Court has held in several cases that the jury's unanimous recommendation for death rendered the *Hurst* error harmless beyond a reasonable doubt.[2]

The kidnapping aggravating factor in Crain's case remains valid because kidnapping with the intent to inflict bodily harm underlies Crain's first-degree felony murder conviction. *See* § 921.141(5)(d), Fla. Stat. (1997) (including "any: . . . kidnapping"). Therefore, the jury properly considered this aggravating factor

---

2. *See, e.g.*, *Guardado v. Jones*, 226 So. 3d 213 (Fla. 2017), *cert. denied*, Nos. 17-7171, 17-7545, 2018 WL 1568519 (U.S. April 2, 2018); *Middleton v. State*, 220 So. 3d 1152 (Fla. 2017), *cert. denied*, 138 S. Ct. 829 (2018); *Jones v. State*, 212 So. 3d 321 (Fla.), *cert. denied*, 138 S. Ct. 175 (2017); *Hall v. State*, 212 So. 3d 1001 (Fla. 2017); *Knight v. State*, 225 So. 3d 661 (Fla. 2017), *cert. denied*, No. 17-7099, 2018 WL 1369193 (U.S. Mar. 19, 2018); *Kaczmar v. State*, 228 So. 3d 1 (Fla. 2017), *petition for cert. filed*, No. 17-8148 (U.S. Mar. 14, 2018).

in making its sentencing recommendation. *See Davis*, 207 So. 3d at 175. Thus, the jury's unanimous recommendation for death renders the *Hurst* error harmless beyond a reasonable doubt.

Finally, we have previously rejected Crain's other claims that the jury's unanimous recommendation for death is unreliable and the *Hurst* error is, therefore, not harmless beyond a reasonable doubt. *See, e.g.*, *Reynolds v. State*, No. SC17-793 (Fla. Apr. 5, 2018) (denying *Caldwell* claim); *Morris v. State*, 219 So. 3d 33 (Fla.) (no CCP or HAC aggravating factor), *cert. denied*, 138 S. Ct. 452 (2017). Thus, this Court can rely on the jury's unanimous recommendation for death to conclude that the *Hurst* error in Crain's case was harmless beyond a reasonable doubt.

## CONCLUSION

Based on the jury's unanimous recommendation for death, we conclude that the *Hurst* error in Crain's case is harmless beyond a reasonable doubt. Accordingly, we affirm the postconviction court's order denying his successive motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and LAWSON, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Hillsborough County,
Michelle Sisco, Judge - Case No. 291998CF017084000AHC

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, Ann Marie Mirialakis and Ali A. Shakoor, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Scott A. Browne, Senior Assistant Attorney General, Tampa, Florida,

for Appellee